REGAN, Judge.
The plaintiff, Naomi M. Drake, who formerly occupied the position of Supervisor and Deputy Registrar of the Bureau of Vital Statistics, Board of Health of the Health Department of the City of New Or *93 leans, was discharged therefrom by Dr. Rodney Jung, the Director thereof, for seven reasons which were enumerated in a letter addressed to her dated March 18, 1965.
The plaintiff appealed to the Civil Service Commission of the City of New Orleans endeavoring to obtain reinstatement to her former position.
A lengthy hearing commenced on May 13, 1965, and in the course thereof, the testimony of innumerable witnesses was adduced on behalf of the City and the plaintiff. On August 18, 1965, the Commission rendered its decision in which it affirmed her dismissal, predicated primarily upon the fact that she was guilty of insubordination by refusing to comply with the directives of her superiors. However, the Commission awarded her 45 days annual leave which she had accumulated and which had been denied her by the appointing authority.
From the foregoing decision of the Civil Service Commission, the plaintiff has prosecuted this appeal.
The decisions of the Civil Service Commission are final with respect to the facts, and may be appealed to this court only on questions which involve an error of law.[1] Therefore, it is not within the purview of this opinion to review any findings of fact by the Commission.
The only substantial question of law posed for our consideration by the plaintiff involves the finding of the Commission that she was guilty of “insubordination”.
The letter of dismissal[2] addressed to the plaintiff enumerated seven reasons for the termination of her employment. However, in none of these reasons was insubordination referred to, and as a result of this omission, she maintains that she failed to receive sufficient written notice that “insubordination” constituted a ground for her dismissal.
The pertinent constitutional provision[3] reads:
“No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority.”
Therefore, the plaintiff concludes that she was deprived of the constitutional guarantee of notice in view of the Commission’s affirmation of the dismissal by the appointing authority on the ground of insubordination.
*94 An analysis of the record, which consists of 794 pages of testimony, discloses that an abundance of evidence was adduced herein to fully substantiate the charge of insubordination. Therefore, the only vital question posed for this court’s consideration is whether the Commission was justified in upholding the plaintiff’s dismissal upon the ground of insubordination when this accusation was not explicitly delineated in the reasons given to the plaintiff for her dismissal.
The primary basis for the introduction of the evidence which we shall refer to hereinafter, was to prove that the plaintiff was insubordinate and refused to follow the directives contained in two letters addressed to her by her superior, Dr. Rodney Jung, dated respectively August 19, 1964, and March 12, 1965, which read:
“In accordance with- the attached opinions of the Legal Advisory Committee to the Board of Health and of Mr. J. B. Kiefer, Dr. Nick Accardo, Registrar for the Parish of Orleans, has instructed me to direct you to issue certified copies of birth and death certificates, on request, to persons qualified under the provisions of R.S. 40:158.
“This means that in the future certified copies are not to be withheld because of the incompleteness or suspicions of inaccuracy of the original record. This does not mean that we are not to continue to exercise due effort to maintain the accuracy and completeness of the records.” (Emphasis added.)
* * * * * *
“Your attention is directed to the opinions of the assistant city attorney and of the Legal Advisory Committee to the Board of Health indicating that certified copies of birth and death records should be issued on request to persons with a tangible interest This policy has been formally approved by the Board and ordered adopted by the Registrar.
“You are therefore hereby again instructed to provide certified copies of birth and death records on request to persons with a tangible interest and paying the statutory fee.” (Emphasis added.)
The evidence adduced from several or more attorneys at law and others who appeared and testified at the hearing clearly revealed that the plaintiff intentionally and deliberately violated the directives contained in these letters with respect to issuing vital statistics certificates in conformity with R.S. 40:156 and R.S. 40:158.[4]
The Commission found as a fact that she was insubordinate in her steadfast refusal to comply with the directives of her superiors, and that she pursued an inflexible course of conduct in arbitrarily refusing to issue such records.
The Commission pointed out that the statutes dealing with the necessary completeness of vital statistics records refer to original registration, and did not grant the plaintiff the right, nor impose upon her the duty, to refuse to issue a certified copy *95 of what already appeared on the records in her possession.
In addition thereto, the Commission found that the course of conduct pursued by the plaintiff in refusing to issue copies of vital statistics certificates in conformity with the provisions of R.S. 40:158, as amended, became an obstacle to the desires of her superiors as to how the office of the Bureau of Vital Statistics should be conducted. In effect, her inflexible, dogmatic stand on the question of how, when and to whom certified copies of birth and death certificates should be issued was insupportable. There was no satisfactory explanation for her capricious and arbitrary actions, or of those under her supervision.
The evidence adduced also disclosed that since the year of 1960, a minimum of 4,700 applications for certified copies of birth certificates and a minimum of 1,100 applications for death certificates had been held in abeyance by the plaintiff.
The whole tenor of the record discloses that the plaintiff maintained a course of conduct which was contrary to the directives of her superiors. Her will was substituted for their’s and, to use an expression of the Commission, she “became, in effect, an autocrat within the classified service.”
However, the critical point in this dissertation is that the letters revealing the directives of the plaintiff’s superiors were admitted into evidence without objection by her or her counsel. Under these circumstances, she cannot now complain of any discrepancy which exists between the notice of discharge and the ruling of the Civil Service Commission which found her insubordinate. A similar situation arose in the case of Bonnette v. Louisiana State Penitentiary[5] wherein the organ for the court reasoned as follows:
“In the case at bar, however, we are faced with an instance in which introduction of evidence of specific and detailed acts of misconduct beyond the information contained in the notice “was permitted without objection upon the part of the employee. While the discrepancy in question was noted by a member of the Commission during the hearing still no objection was made by either appellant to evidence which went beyond the averments of the notice. In ordinary civil proceedings, under such circumstances, evidence so introduced has the effect of enlarging the pleadings.
“It is most significant to point out that Rule 13.19(k) of the Commission provides as follows:
‘(k) In all matters not provided for in these Rules, hearings and the taking of testimony shall be conducted according to the accepted practice in civil trials before the District Courts of the State.’
“The foregoing rule of the Commission has the effect of law pursuant to Article XIV, Section 15(1) (8), Louisiana Constitution 1921. We conclude, therefore, that appellants’ failure to timely object to the alleged insufficiency of the notices issued herein cured the inadequacy thereof, if any. Clearly, introduction of the evidence without timely objection enlarged the pleadings and appellants may not at this stage complain of their own dereliction. While it is true that appellants were not represented by counsel but elected to represent themselves in proper person at the hearing before the Commission, they must necessarily accept the consequences of their own inadequacy and inexpertness.”
Unlike the Bonnette case, the plaintiff herein was represented by able counsel, and she is now precluded from complaining that the letters containing the directives of her superior should not have been admitted into the record.
*96 In conclusion, the record, to reiterate, discloses that Mrs. Drake was directed by her superiors to issue vital statistics certificates in conformity with the existing statutory law, and that she refused to do so in violation of these directives; therefore, the Commission’s finding as a fact that she was insubordinate is fully substantiated by the evidence adduced herein.
For the foregoing reasons, the decision of the Civil Service Commission of the City of New Orleans is affirmed. The plaintiff is to pay all costs resulting from this litigation.

. La.Const. of 1921, Art. 14, § 15(0) (1); Marullo v. New Orleans Police Dept., 169 So.2d 693 (La.App.1964).

. “1. Constant harassment to members of the Board and to the Director of Health by irate citizens complaining of your rude treatment of them.
“2. Frequent complaints in writing from attorneys and the public alike complaining of your failure to assist them in obtaining the necessary certificates they have requested.
“3. On November 5, 1958, a meeting was held with you, myself and the then Director of Health, the late Dr. Walter P. Gardiner, wherein ‘certain practices pertaining to bad public relations wore discussed at great length.’ In his letter to you Dr. Gardiner also stated, ‘The continuance of such practices shall invoke appropriate disciplinary action.’ Bad public relations apparently seem still to exist.
“4. Your apparent lack of leadership and tbe manner with which you address your fellow employees.
“5. Reprimanding employees before fellow workers and the public, rather than in the privacy of your office.
“6. Lack of courtesy and tact by making such statements to a citizen as, ‘All of the people born in White Castle, La. are half breeds.’
“7. Rate of turnover of employees under your supervision because of your attitude and treatment of them as can be attested to by numerous letters to this office and the City Civil Service Department.”

.La.Const. of 1921, Art. 14, § 15 (N) (1).

. R.S. 40:156 “* * * Subject to the provisions of R.S. 40:158, the local registrar for the parish of Orleans or his deputy shall, upon request, furnish to any applicant a certified copy of any birth, death, or marriage certificate filed in his office, or a transcript of any record obtained under the provisions of R.S. 40 :- 260, or shall permit its inspection. As amended Acts 1950, No. 513, § 1.”
R.S. 40:158(0) “The state registrar and the local registrar for the parish of Orleans shall not permit inspection of the records or issue a certificate, or any thereof, unless he is satisfied that the applicant therefor has a direct and tangible interest in the matter recorded, subject, however, to review by their board or the court under the limitations of this Section. The credentials of any attorney at law authorized to practice law in this state, together with a declaration of the record in which he is interested and that he is the legal representative of the party at interest, shall constitute sufficient proof of a direct and tangible interest in the matter recorded.” (Emphasis added.)

. 148 So.2d 92 (La.App.1962).