208 So.2d 25 (1968)
Ruth K. ROBBINS
v.
NEW ORLEANS PUBLIC LIBRARY.
No. 2908.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1968.
*26 Robert G. Polack, New Orleans, for appellant.
Moise W. Dennery, Joseph J. Gendusa, Jr., New Orleans, for appellee.
Before HALL, JOHNSON and TUCKER, JJ.
JOHNSON, Judge.
Mrs. Ruth K. Robbins, who had acquired twenty-one years of meritorious and civil service status in the New Orleans Public Library, was transferred on August 3, 1966, by her newly appointed supervisor from her position of Chief of the Cataloging Division to the position of Chief of the Circulating and Stacks Division. Five months later, January 3, 1967, she was discharged as an employee by Guenter A. Jansen, City Librarian (since resigned), "for the good of the library" based upon reasons set forth in the letter of dismissal addressed to her.
Mrs. Robbins appealed to the Civil Service Commission of the City of New Orleans for the purpose of being restored to her former position and status.
After referring her exception as to the legal sufficiency of the notice of dismissal to the merits, the Commission heard testimony of witnesses for the Library and for *27 the appellant. The Commission handed down lengthy comments and findings of fact. The Commission ruled that the dismissal of appellant was unwarranted, but nevertheless concluded that Mrs. Robbins should be suspended "from the classified service as a Librarian III for a period of 120 days without pay beginning January 4, 1967, and during which 120 day period, which is to be noted on appellant's record, appellant will suffer loss of all benefits of her former position as a Librarian III."
Appellant has appealed from that decision, contending that (a) the notice of discharge was not sufficient in law; (b) that the statements which the Commission believed appellant made were not such as to warrant disciplinary action against her under the circumstances as found by the Commission; and (c) that the suspension of 120 days without pay, including the notation thereof on her record, with loss of benefits as Librarian III during said suspension is beyond the Commission's limit of authority fixed by law and is, therefore, erroneous.
The employee's dismissal from the Library Service was accomplished by a letter dated January 3, 1967, setting forth in three paragraphs the reasons therefor, as follows:
"1. While in charge of the Cataloging Division, you refused to cooperate with your supervisor, the head of the Technical Services Department, and you responded to his leadership with resentment and emotional antagonism.
"2. Upon being transferred from the position of Chief of the Cataloging Division, you encouraged your former subordinates in the Cataloging Division to sabotage the work by deliberate slowdowns and feigned sickness.
"3. You created continued discontent and low morale by telling staff members you were `out to get' Mr. Jansen and Mr. Mounce, that you would be back in six weeks and that it would take a year to straighten out the mess Mr. Mounce, your new supervisor, had made. Furthermore, you called at least one of those who remained loyal to the administration `a traitor.'"
It is clearly stated by the Commission that all of the alleged acts of misconduct charged against this employee are supposed to have taken place prior to August 3, 1966, while she was still working in her former job as Chief of the Cataloging Division. On that date she was summarily and without previous notice transferred to the position of Chief of the Circulation and Stacks Division. The Commission further said that there was no testimony about any acts detrimental to the classified service on the part of this employee as having taken place after this transfer. We believe that this long delay in dismissing plaintiff from the Service by the letter of January 3, 1967, emphasizes the necessity of Civil Service Ruling 12.3 requiring detailed reasons to be given by the appointing authority for such action.
When the employee appealed her dismissal to the Commission she excepted to the sufficiency of the notice and the Commission referred the exception to the merits. We think the exception should have been maintained. The whole letter is a vague assumption and generalization of allegations. Our courts have held a number of times in cases of this nature that the employee is entitled to a full description of the acts complained of and the notice should set forth the date, places, etc., and the names of witnesses should be furnished to enable the employee to be fully informed to answer and prepare the defense. See Hays v. Louisiana Wild Life and Fisheries Commission, 243 La. 278, 143 So.2d 71, where it says:
"* * * The requirement of this rule that detailed reasons be stated for the action taken plainly comprehends a fair and clear statement of the misconduct of the employee including, whenever pertinent, time, dates, places and amounts, if, as in this case, monies are alleged to *28 have been unjustly secured and misappropriated. This is necessarily so, since, under Section 15(N) (1) (a) of Article 14 of the Constitution, the employee appealing from the disciplinary action has the burden of disproving the facts stated in the letter of dismissal as grounds for the employing authority's action. Unless, then, the facts are detailed, as required by Rule 12.3, the employee would have little chance on appeal to carry the burden, even though he might have a valid defense to the action." (Emphasis theirs.)
In this case, there is not much left to the letter-notice after the Commission threw out most of it. In the first line of the Commission's finding of fact, page 21 of the record, the Commission finds that the letter was "admittedly vague." At the end of paragraph 2, page 22 of the record, the Commission said: "* * * In essence, paragraph 2 of the letter of dismissal is without substance."
In paragraph 5 of the findings of fact, beginning at the bottom of page 23 of the record the Commission stated: "* * * and we find no substance to the speculative conclusion and conjecture drawn in paragraph 3 of the letter of dismissal that appellant's actions and words created discontent and low morale." If there could be a case where the appointing authority should furnish more detailed information as to names of witnesses, dates, places, nature and subject of the occasions involved and the language and acts charged against the employee, this is it, mainly, if for no other reason, because of the fact that the acts suggested in the letter were supposed to have taken place many months prior to the date of the dismissal, and while the employee was on an entirely different job than the one she was holding on January 3, 1967.
In paragraph 1 of the findings of fact at the end of page 21 of the record the Commission said: "The letter of dismissal, while admittedly vague as to times and as to places of appellant's alleged acts and the making of statements attributed to appellant, was sufficient to inform appellant of the basis for the disciplinary action taken by the appointing authority and the rationale of the case against her which she would be required to rebut."
The rationale of the case was alleged misconduct detrimental to the classified service. But, the misconduct must be specific as to time, place, circumstance, etc., to confine the testimony and considerations within pertinent limits. The importance of this is emphasized by the findings of the Commission in paragraph 6 at page 24 of the record, that appellant was guilty of referring to her superior as a "scared pup" and a "squirt," neither one of which epithets was charged against her in the letter.
On this subject, Mr. Justice Ponder in his concurring opinion on the rehearing in the case of Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422, stated:
"In the original opinion handed down in this case we did not consider the sufficiency of the charges made by the appointing authority. On rehearing it has been strenuously urged that the charges were not sufficient to inform the employee of the acts complained of requiring disciplinary action. The written charges preferred by the appointing authority are in effect mere conclusions without stating the facts upon which they are based. I do not think that the charges herein comply with our Constitution and therefore I concur in the decree.
In that Brickman case Mr. Chief Justice Fournet wrote strong, cogent, concurring reasons for holding the notice to be vague, not in compliance with requirements of the law and, therefore, defective. Part of what he said we quote, as follows:
"The Constitution also declares that the burden of proof on appeal, as to the facts, is on the employee (Art. 14, Sec. 15(N) (1) (a)); but in order to avoid placing an impossible burden on him or *29 her, the employee must of necessity have something explicit to refute, and lacking a statement of fact which is subject to disproof in a legally accepted sense, the `cause' stated is sufficient to meet legal requirements."

* * * * * *
"With reference to the other cause assigned for dismissal, in my opinion a mere reading of its language shows how well-nigh impossible it would be to convincingly disprove such vague and general charges. At most it is a mere conclusion of the appointing authority, without giving any factual basis therefor. Such a cause for disciplinary action cannot be said, in good conscience, to have sufficiently apprised appellant of exactly what she would be required to disprove in order to meet the burden placed on her on appeal, and I think was clearly ineffective."
We will discuss next the question as to whether there is evidence to support the Commission's ruling. It is a well recognized principle in our jurisprudence that in a case such as this only questions of law may be reviewed by appellate or reviewing courts as the decisions of the Civil Service Commission are final on the facts. It is only where there is no evidence in the record showing that the appellant did the acts for which she was dismissed or suspended that a question of law arises. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5; Brickman v. New Orleans Aviation Board, supra; Smith v. Louisiana State Board of Health, La.App., 201 So.2d 14; Speegle v. State Department of Institutions, La.App., 198 So.2d 154; Drake v. Department of Health, La.App., 188 So. 2d 92; Simmons v. Division of Employment Security, La.App., 144 So.2d 244, and many others.
The Constitution of Louisiana, Article XIV, Sec. 15(N) (1), provides that no person, having acquired permanent Civil Service status shall be subject to disciplinary action "except for cause, expressed in writing by the appointing authority." To say merely that one is guilty of misconduct is not enough. The misconduct charged must be spelled out with allegations of sufficient facts and details so as to make identification positive.
Our Supreme Court has defined "legal cause for disciplinary action" under that provision of the Constitution, thus: "Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service," and it is also pointed out that "there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present, and any disciplinary action by by the commission is arbitrary and capricious." Leggett v. Northwestern State College, supra; Brickman v. New Orleans Aviation Board, supra, and cases cited therein.
Of course, if, as was held in the two cases last cited, there is any evidence before the Commission from which a conclusion can be drawn that the appellant's conduct was prejudicial to the service, we cannot disturb its ruling. Moreover, if there is probative evidence to prove that there is a real and substantial relation between the conduct of appellant and the efficient operation of the public service, then there is legal cause for disciplinary action.
Some five or six weeks before appellant was transferred, on August 3, 1966, a new supervisor, Mr. Mounce, was appointed in appellant's cataloging division. The Commission found that personality conflict between Mounce and appellant developed which resulted in her transfer on August 3 to the better position with higher wages as chief of another division. That ended whatever difference that existed and the Commission found that thereafter there was no further complaints against this employee. Apparently, everything was "peaches *30 and cream," and everybody was happy from then on. Mr. Mounce made it clear (pages 10, 11 and 13, of the record) that this transfer was "not intended as a disciplinary action or demotion." We are convinced, therefore, that the appointing authority, by waiting five months, should be estopped from prosecuting disciplinary action against appellant on such vaguely written charges of misconduct which the Commission found took place at some remote prior time.
In its discussion, the Commission indicated strongly that the gravamen of this whole controversy was a personal dislike one for the other between Mr. Mounce and appellant. For instance, at the top of page 11 of the record, the Commission said: "The evidence with respect to confrontations between appellant and Mr. Mounce prior to her transfer, as suggested in paragraph 1 of the letter of dismissal, is conflicting and generally unsubstantiated, particularly on the part of the witnesses for the appointing authority, excluding appellant's immediate supervisor, who was the only one with any personal knowledge or gave positive testimony."
Appellant having denied the inferences of misconduct made against her and Mr. Mounce being the prosecuting witness, it is reasonable to say that if he made positive statements of fact the denials made by appellant destroys the weight of his testimony, unless he should be accorded greater credibility. There is no transcript of testimony in the record and there is no quotation of what Mr. Mounce said. When the Commission refers to Mounce as being "the only one with personal knowledge or who gave positive testimony," we think it means the only one other than appellant. We say that because we know she must have personal knowledge of what happened and the Commission records that appellant testified, denying the charges. That leaves nothing worthy of consideration against this appellant. This is particularly true in view of what the Commission said near the end of its discussion about the absence of "compelling proof," part of which is quoted later in this opinion.
Mrs. Ulma J. Jackson and Mrs. Levy MacArthur, Library employees, appeared before the Library Board on December 6, 1966. While the record is not entirely clear, we assume that these two ladies also made statements before the Commission on the appeal from appellant's dismissal. Their testimony as a whole is absolutely worthless and amounts to no evidence whatsoever. Of Mrs. Jackson, the Commission said:
"* * * Mrs. Jackson's theories and beliefs about the appellant's alleged part in the problems confronting the administration of the main library were based on gossip, rumors and her own speculations. At no time did she herself hear from appellant's lips any suggestions of mutiny or sabotage, nor did she hear from appellant's lips any order or suggestion that library employees not cooperate in the orderly administration of the library or feign sickness, nor did she hear appellant say any of the statements attributed to appellant in paragraph #3 of the above quoted letter of dismissal. For that matter, neither did Mr. Mounce according to his own direct testimony."
This is what the Commission said, in part, about Mrs. MacArthur's testimony:
"Mrs. Levy MacArthur, an employee of the Public Library for eighteen years, professed concern at the `bad press' accorded the Public Library and its administrators in 1966, and assumed that appellant instigated much of the trouble by giving information to `the politicians.' Some of Mrs. MacArthur's beliefs were based upon what other employees had said the appellant said. * * *"
The Commission did say that Mrs. MacArthur heard appellant make the statement at some unknown time prior to her transfer that "don't cooperate with administrator," and, "it would take a year to straighten out the mess made by Mr. Mounce in the Cataloging Department," and that Mr. Mounce *31 was "a scared pup" and that she did not have time to talk to that "squirt." These things are not found charged against appellant and Mrs. MacArthur's testimony is no evidence whatsoever.
Then the Commission says (near the end of its discussion) that:
"* * * Although it was incumbent upon appellant, as the subordinate employee, to adjust to the reasonable orders and proper innovations of her new supervisor, this she apparently did not do gracefully. Yet, there is no compelling proof that she overtly or continuously refused to submit to authority or refused to carry out orders or obstructed the orderly conduct of the library either before or after her transfer to the Circulation Division. Nor can this Commission find that appellant became a detriment to the classified service or to the efficient operation thereof, or that she lost her usefulness as an employee thereof. Insubordination by appellant justifying her dismissal is absent. Her dismissal under these circumstances was not warranted and evidenced an abuse of discretion and reasonableness."
After careful study of the Commission's report and findings, we conclude that what the witnesses said amounts in law to no evidence of any probative weight, and this puts the decision appealed from in the category of being arbitrary and capricious. There is no proof to warrant a positive finding that appellant was guilty of conduct prejudicial to the Library Service.
The Library is a governmental institution administered by the City of New Orleans and subject to the pertinent state laws. In privately owned business and industry the authority and rights of the employer over the employee are not inhibited by the Civil Service law and regulations. Restrictions in private employment in most cases are placed there by contract. We can well appreciate the annoyance of a cantankerous employee, and, if the efficiency of the service is prejudiced by the employee's conduct, prompt action should be taken to do something about it with presentation of proper notice and proper proof. In this case the appointing authority waited too long to act and then its action was poorly presented in all respects.
For the reasons assigned the decree of the Commission reversing the dismissal of appellant from the Library Service by the appointing authority, be and the same is hereby affirmed. In all other respects the ruling of the Commission is recalled and reversed. It is further ordered that appellant be reinstated to her post as Librarian III as Chief of the Circulating and Stacks Division with full pay and with all benefits and rights from January 4, 1967.
Affirmed in part.
Reversed in part.