325 So.2d 696 (1976)
Stephen B. HAMLETT
v.
DIVISION OF MENTAL HEALTH, LOUISIANA HEALTH AND HUMAN RESOURCES ADMINISTRATION.
No. 10523.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
*697 Victor L. Roy, III, Baton Rouge, for appellant.
Robert L. Raborn, Baton Rouge, for appellee.
Before LANDRY, COVINGTON and BARNETTE, JJ.
LANDRY, Judge.
This appeal by Stephen B. Hamlett (Appellant) seeks review of rulings by the State Civil Service Commission (Commission) confirming two unsatisfactory service ratings given Appellant, and also confirming Appellant's three day suspension without pay and ultimate dismissal by Appellant's employer, Division of Mental Health, Louisiana Health and Human Resources Administration (Employer). We affirm Appellant's three day dismissal without pay, but set aside the unsatisfactory ratings and Appellant's discharge.
There is little, if any, dispute concerning the facts. Appellant was a classified employee in the State Civil Service System with the classification of Caseworker IV. From 1970 until his discharge on December 14, 1974, Appellant was employed at the Baton Rouge Area Alcoholism Clinic (Clinic), a division of the Baton Rouge Mental Health Center (Center), which is a division of Employer. Prior to his employment at the Clinic, Appellant had approximately 8 years service in other classified capacities, thus giving Appellant a total of over 12 years continuous service in the State Civil Service System. At the time of Appellant's dismissal, Carl L. Haydel, Administrator of the Clinic, was Appellant's immediate superior, and Robert D. Watts, Administrator of the Center, was immediately superior to Haydel. The function of the Clinic is to guide and counsel Alcoholics and their families in handling the problems incident to alcoholism. As a Caseworker IV, it was Appellant's duty to contact alcoholics as patients in state institutions, and also as out patients and offer guidance, direction and assistance. One of the more important aspects of the work includes dealing with alcoholics, who have been "dried out" in either public or private institutions, and assisting such persons in leading a life of total abstinence from alcohol as the only solution to their drinking problem.
It is apparent that friction developed between Appellant and Haydel shortly after Haydel became Clinic Administrator on June 1, 1972. Appellant felt that Haydel did not extend Appellant due professional courtesy because of Haydel's unnecessary interference with what Appellant considered Appellant's professional discretion in *698 handling cases assigned to Appellant by Haydel. By the same token, Appellant's attitude convinced Haydel that Appellant was "resistive" to Haydel's supervision and control.
We deem the relationship between Appellant and Haydel to be essentially a personality conflict. In any event, this state of affairs resulted in four separate actions being taken against Appellant, three by Haydel and one by Watts. On April 1, 1974, Haydel, as Appellant's rating officer, assigned Appellant an unfavorable service rating. On July 24, 1974, Watts suspended Appellant for three days without pay. A second unsatisfactory rating was given Appellant by Haydel on September 30, 1974. Appellant was discharged by Haydel on December 12, 1974, after Haydel had previously relieved Appellant of all duties, but with pay, on October 4, 1974.

THE UNSATISFACTORY RATING OF APRIL 1, 1974
Pursuant to the uniform rating system requirement contained in Civil Service Rules 10.1 et seq., on April 1, 1974, Haydel entered an unsatisfactory rating on Appellant's record. Written notice of the rating and the reasons therefor were given Appellant that same date in conformity with Civil Service Rules. The basic reasons given were Appellant's alleged resistance to supervision and negative attitude toward clinical programs in three enumerated instances.
First mentioned was an incident of Friday, June 29, 1973, when Haydel assigned Appellant the case of a patient about to be released from the alcoholic unit at East Louisiana State Hospital, Jackson, Louisiana. Haydel allegedly instructed Appellant to contact the patient by telephone before the patient's imminent release on the following Monday. Appellant apparently resented the instruction as to when the patient should be contacted and informed Haydel that Haydel should merely assign Appellant the case and allow Appellant to handle the matter as Appellant thought best. At the hearing before the Commission, Appellant explained that he was familiar with the patient and the patient's wife and family, and that Appellant also knew the circumstances into which the patient would be discharged. Appellant also testified that, after some discussion, Haydel concluded the incident by simply telling Appellant to handle the matter. Since Appellant was leaving town that evening on a week of annual leave, Appellant further stated he assigned the case to a subordinate, Adrian Aycock, with instructions that Aycock handle the matter if Aycock felt capable and, if not, to leave the file on Appellant's desk and Appellant would attend to the matter upon Appellant's return from leave. Appellant conceded he did not relay to Aycock Haydel's suggestion or instruction that the patient be contacted before discharge from the institution because Appellant felt that Haydel's mention of contact was merely a suggestion; he also felt Aycock was fully capable of handling the matter without instruction from anyone, and that it was best to let Aycock exercise his professional discretion. Appellant also testified that, from his knowledge of the case and his review of the file when it was presented by Haydel, Appellant saw no need to contact the patient before his discharge and felt that the patient would in no way suffer if initial contact were delayed until after Appellant's return from leave. The record shows that the patient was contacted during the next week. This incident was documented by Haydel in a memorandum dated July 10, 1973.
On July 12, 1973, without Haydel's knowledge or consent, Appellant wrote Watts requesting permission to conduct psychological testing of patients. Although not a licensed psychologist, Appellant had conducted such tests under supervision by the Clinic's prior administrator who was licensed in this field. Appellant testified that he felt such permission should be requested of his most immediate superior *699 who was a licensed psychologist, and that Appellant knew Haydel was not so qualified. Haydel viewed the matter as an attempt to circumvent his authority as well as a violation of Haydel's oral order that no communication regarding Clinic operations be made with higher authority without Haydel's prior approval. This occurrence was entered by Haydel on Appellant's record as another example of Appellant's failure to accept supervision and to cooperate in the affairs of the Clinic.
On February 19, 1974, Haydel requested Appellant to arrange his schedule so that Appellant could work on Wednesday evenings. Appellant expressed considerable displeasure at the request and responded that he would "try" to do so, and further responded by uttering a four letter obscenity which was overheard by Haydel. Although Appellant did work Wednesday evening shifts as directed, Haydel interpreted Appellant's response and reaction as another example of Appellant's failure to accept supervision and cooperate in conducting the work of the Clinic.
The final reason for the first unsatisfactory rating was Appellant's alleged failure to maintain Appellant's records, case files and charts up to date. The Commission refused to receive evidence of this charge because the records are made confidential by law and, as such, were not made available to Appellant; consequently, Appellant was unable to prepare a defense of this accusation. It is agreed that this charge is not at issue herein.

THE THREE DAY SUSPENSION ORDERED JULY 24, 1974
For the week of June 18 to June 24, 1974, Appellant was assigned to 24 hour page duty normally performed by Haydel who was then on sick leave. The assignment entailed answering a paging device known as a "beeper". A signal from the pager required a telephone call to an answering service which received calls from alcoholics at all hours when the Clinic was closed. Appellant acknowledged receiving at least one call to which he did not immediately respond, but which he answered the following morning on returning to the office. Appellant explained that he failed to answer immediately because he considered such an action overtime work which would be in violation of a most emphatic no overtime work memorandum received from Watts after Appellant accepted the pager assignment, but before the call was received. When Appellant's failure to respond was made known to Watts by Haydel, Watts summoned Appellant for an explanation. Appellant informed Watts that he had no explanation to offer. At the hearing before the Commission, Appellant testified that he refused explanation on advice of his counsel who instructed Appellant to offer Watts no explanation whatsoever unless counsel was present. Appellant conceded he did not tell Watts of the attorney's instruction. For failing to answer the pager and refusing to offer an explanation for such conduct, Watts suspended Appellant for three days without pay.

THE SECOND UNSATISFACTORY SERVICE RATING
On September 30, 1974, Haydel gave Appellant another service rating, in compliance with Civil Service Rule 10.8(a), which requires a rerating of an employee within six months of a prior unsatisfactory rating. This second rating was also unsatisfactory, based solely upon Appellant's conduct requiring the July 24, 1974 suspension, discussed above, during a period in which Appellant was already operating under the initial unfavorable rating. Except where an unsatisfactory rating is given, the only rating called for by the Civil Service Rules is an annual rating to be made March 31.

APPELLANT'S DISMISSAL ON DECEMBER 12, 1974
The reasons assigned in Haydel's letter of dismissal, dated December 12, 1974, effective *700 at the close of that work day, are the previously documented difficulties between Haydel and Appellant and the two consecutive unsatisfactory ratings hereinabove discussed. Although Appellant was not terminated until December 12, 1974, it is conceded that on October 4, 1974, Haydel suspended Appellant from all further performance of duties but required Appellant to report to the office daily during which limbo period Appellant received full pay. Haydel explained that he suspended Appellant from duty rather than dismiss him because at that time Haydel was not sure as to the proper dismissal procedure. Haydel also stated that on December 11, 1974, he received express delegation of authority to appoint and discharge all nonmedical personnel employed at the Clinic and exercised said authority the following day by discharging Appellant.

CONCLUSIONS OF LAW
The constitutionally established Civil Service Law of this state is clear in its requirement that disciplinary action against a classified employee must be based on legal cause. La.Const. of 1974, Article X, Section 8(A); La.Const. of 1921, Article XIV, Sec. 15 (N)(1). See also Civil Service Rule 12.1. Our Supreme Court has jurisprudentially defined legal cause for disciplinary action against a classified employee as that conduct which impairs the efficiency of the public service, and which bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5. Particularly appropos to the instant case are those authorities which hold that the mere fact that a classified employee has disagreements with co-employees or superiors, or that ill feeling arises between the employee and others, or that the employee is unpleasant to work with, or that the employee feels his superiors are incompetent, does not subject the employee to disciplinary action, unless it is shown that such conduct or personality traits produce results detrimental or prejudicial to the efficiency of the public service. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422; Robbins v. New Orleans Public Library, La.App., 208 So.2d 25.
Applying the foregoing criteria, we find no legal cause for the initial unsatisfactory rating given Appellant in this instance. The record is barren of evidence showing that the efficiency of the service was impaired or disrupted or that the needs of any patient were neglected as a result of the incidents assigned by Haydel as grounds for the initial unsatisfactory rating. We conclude, therefore, that this rating is invalid for lack of legal cause.
As regards the three day suspension meted Appellant on July 24, 1974, the test of validity is the same as that discussed above in disposing of the issue of the initial unsatisfactory rating. However, in this connection, we find legal cause for the suspension. Appellant's failure to answer the pager or beeper, after having accepted the responsibility, was a failure to perform a duty which could perhaps be detrimental to the service rendered by the Clinic. While there is some slight basis for Appellant concluding that the previously received memorandum prohibiting overtime work precluded his response to the summons after normal working hours, nevertheless, Appellant was not justified in declining to offer any explanation whatsoever to Watts for his failure to answer the pager. We are mindful of an employee's right to counsel and the privilege of relying thereon. We are also mindful that an employee is not required to give incriminating testimony against himself. La.Const. 1921, Article XIV, Sec. 15(P)(1). Nevertheless, the foregoing constitutional authority provides the penalty of forfeiture of position in the case of an employee who refuses to testify at a hearing against him on the ground of self-incrimination or who refuses to waive immunity *701 from criminal prosecution on account of any matter about which he may be asked to testify at such a hearing. While the conference with Watts regarding Appellant's failure to answer the pager was not a hearing as envisioned by La.Const. of 1921, Art. XIV, Sec. 15(P)(1), Appellant's refusal to answer Watts' inquiry was a violation of the spirit if not the letter of said constitutional provision. We find that Appellant's failure to answer the pager, coupled with his refusal to respond to Watts' inquiry concerning the incident, is ample ground to sustain the three day suspension.
Since we find no legal cause to support the initial unsatisfactory rating, we must also reverse the ensuing rating of September 30, 1974. The only service rating authorized for an employee not operating under an unfavorable service rating is that provided in Civil Service Rule 10.2 to be made as of March 31 of each year. We therefore disregard entirely this latter rating as being unauthorized by Civil Service Rules under the circumstances shown herein.
The reasons given for Appellant's discharge are the same as those assigned by Haydel for the prior unsatisfactory ratings. No new or additional reasons or grounds are urged in this connection. Granted that the pager incident may have supported Appellant's discharge as urged by the Appointing Authority predicated on the holding in Hughes v. Department of Police, La.App., 131 So.2d 99. Nevertheless, the Appointing Authority saw fit to view the beeper incident, which occurred long before Appellant's dismissal, only as ground for a three day suspension which was in fact meted Appellant. Having disciplined Appellant for this infraction, the Appointing Authority is estopped from waiting approximately six months to revive this episode as ground for further disciplinary measures. See Robbins v. New Orleans Public Library, above.
Appointing Authority strongly maintains that Appellant is subject to dismissal for cause in that Appellant breached his professional duty and obligation by exhibiting an indifference to the demands and needs of the patient whom Haydel requested Appellant to contact before the patient's release from East Louisiana State Hospital. It is suggested that Appellant's handling of the case rendered possible the patient's discharge without benefit of prior consultation, and also subjected the patient to the possibility of a week's exposure to outside conditions with no supervision, which was not in the patient's best interest. In refusing to answer the beeper call for assistance, it is urged that Appellant callously ignored what could have been a call for help from an alcoholic in distress and that such conduct is proof of Appellant's professional incompetence and grounds for dismissal.
As regards handling the case of the East Louisiana State Hospital patient, we are mindful that Appellant's position is that of a professional who must, of necessity, be allowed a certain tolerance in the exercise of professional judgment within the realm of his specialty. We find no breach of professional duty by Appellant to the patient in question in this instance. Appellant was aware of the patient's history and background. After reviewing the file, Appellant concluded as a matter of professional judgment that there was no need to contact the patient before release, and that failure to contact the patient within a week of discharge would not be detrimental to the patient's welfare. We conclude that the ultimate result of Haydel's conversation with Appellant at the time of the assignment was that Haydel left the matter to Appellant's professional discretion. The record shows the patient was in fact contacted during the following week. There is no showing that the manner in which the case was handled resulted in any adverse effect upon the patient concerned. So far as the record shows, it *702 does not appear that standard procedure calls for the case to have been handled in the manner first suggested by Haydel. The record before us fails to show professional incompetence on Appellant's part predicated upon Appellant's handling of this particular assignment.
We have previously disposed of the pager or "beeper" incident by holding that while this occurrence properly subjected Appellant to disciplinary action, Appellant was initially suspended for the infraction and its ensuing related aspects, and that Appellant may not be twice disciplined for a single dereliction.
It is ordered, adjudged and decreed that the Commission's affirmation of Appellant's three day suspension ordered July 24, 1974, be and the same is hereby affirmed, and that the Commission's confirmation of Appellant's unsatisfactory ratings of April 1, 1974 and September 30, 1974, and Appellant's discharge as of December 12, 1974, be and the same are hereby annulled, reversed and set aside.
It is further ordered that the aforesaid unfavorable ratings be removed and deleted from Appellant's record, and that a satisfactory rating be granted Appellant as of April 1, 1974, and appropriately entered on Appellant's record.
It is further ordered, adjudged and decreed that Carl L. Haydel, Administrator, Baton Rouge Area Alcoholism Clinic, Division of Mental Health, Louisiana Health and Human Resources Administration, or his successor in office, reinstate Appellant, Stephen B. Hamlett, to the position of Social Caseworker IV, at the aforesaid Clinic, with all of the rights, privileges and emoluments incident thereto, including full pay, promotions, salary increases or other benefits of any nature whatsoever to which said Stephen B. Hamlett was legally entitled as an employee in good standing, from March 31, 1974, to date of reinstatement, with credit to Employer for any income earned by said Stephen B. Hamlett, during the period December 12, 1974, to date of reinstatement; all costs for which Employer may be legally cast to be paid by Employer.
Affirmed in part, reversed in part and rendered.