344 So.2d 436 (1977)
Thomas T. RODRIGUEZ, Plaintiff-Appellant,
v.
BOARD OF COMMISSIONERS, PORT OF NEW ORLEANS, Defendant-Appellee.
No. 11193.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
*437 Fernand F. Willoz, III, New Orleans, for appellant Thomas T. Rodriguez.
J. Michael Orlesh, Jr., and Harry Rosenberg, New Orleans, for appellee.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
Thomas T. Rodriguez (appellant) appeals from a ruling of the Louisiana Civil Service Commission which upheld his dismissal as a classified Harbor Policeman Patrolman with the Board of Commissioners of the Port of New Orleans.
By letter dated October 3, 1976, appellant was terminated for the following reasons: (1) on March 8, 1975 appellant gave false information concerning an accident report and received a one day suspension; (2) on May 1, 1975 appellant reported to work in an improper uniform and gave false information concerning the reasons therefor and received an official reprimand; and (3) on September 29, 1975, appellant failed to report to work for the eleven o'clock p. m. shift and gave false information as to the reasons therefor.
The issues before us are the same that confronted the Commission, namely: appellant argued that he should be permitted to offer defenses to and/or explanations for the prior offenses of March 8, 1975 and May 1, 1975; and, that the alleged offense of September 29, 1975 was not proved or, if proved, did not give legal cause for his dismissal. We shall discuss these issues in the order mentioned.
Appellant contends that the appointing authority was "estopped from reviving" the episodes of March 8 and May 1, 1975 as grounds for dismissal on October 3, 1975. Hamlett v. Division of Mental Health, Etc., 325 So.2d 696 (La.App. 1st Cir. 1976); and, Robbins v. New Orleans Public Library, 208 So.2d 25 (La.App. 4th Cir. 1968).
This issue was raised at the outset of the hearing when counsel for appellant sought to limit the matter before the Commission to the alleged offense of September 29, 1975 by moving to strike the occurrences of March 8 and May 1, 1975 from the letter of dismissal. The motion was denied.
The chairman stated that the Civil Service rules provide that an employee who is the subject of any disciplinary action by his appointing authority has thirty days in which to appeal such action to the Commission. *438 Absent such an appeal and with the lapse of thirty days, the action of the appointing authority is final. Under the ruling complained of, the appointing authority was not required to submit further proof as to these prior offenses nor was appellant permitted to offer any evidence in explanation thereof.
In Hamlett, above, this court held that an appointing authority was estopped from bringing disciplinary action against an employee on the basis of an offense that had occurred six months previously and for which the employee had been previously disciplined. In Robbins, above, a one hundred twenty day suspension for alleged misconduct which had occurred five months previously was set aside. The court stated: ". . . [T]he appointing authority waited too long to act and then its action was poorly presented in all respects." In neither of these cases was there a subsequent offense which prompted further disciplinary action. For this reason the facts in the cited authorities are inapposite to those in the case at bar.
The issue here, therefore, is what is the effect of prior offenses vis a vis a subsequent offense which when considered cumulatively, results in dismissal from employment? A determination of this issue presupposes full proof of a subsequent offense for absent such proof the employee has already been disciplined and the rules of Hamlett and Robbins, above, would apply. With respect to the prior offenses, should the appointing authority be required to come forward with proof of them also? We think not.
In all matters, judicial and/or quasi-judicial, there must be a period of time after which the decision of an authority must be final, whether it is to put an end to litigation (as in the courts) or administrative rulings (R.S. 49:964). The parties must have a reasonable time in which to resolve their differences but all disputes must at some time be resolved and put to rest so that the parties involved can go about their respective endeavors with full certainty of their positions for the future and without fear or consequences of the past. Such certainty and finality is just as important and necessary in personal matters involving classified employees.
We find the issue here similar to that raised in Heinberg v. Department of Employment Security, 256 So.2d 747 (La.App. 1st Cir. 1972), writs refused, 260 La. 1135, 258 So.2d 381 (1972). In Heinberg, the employee charged as a denial of due process a ruling of the Commission wherein he was denied the opportunity to reopen a substandard efficiency rating. This court recognized the Commission's right to construe an unappealed rating as final where the rules of the Commission provide for an adequate remedy by appeal. In so holding, we stated that such a rule ". . . lends itself to the orderly administration of the Civil Service Amendment," and ". . . promotes the finality of administrative findings and decisions under circumstances which protect the basic rights of employees." The facts in the instant matter equally justify our upholding the decision of the Commission on this issue.
With respect to the incident of September 29, 1975, the record is really not in dispute. When appellant failed to report to work and was contacted at his home, he first stated that he thought it was a changeover shift and he was not required to report at eleven p. m. When reminded that if it was a changeover shift date he would have had to report at three p. m. instead of eleven p. m. a rule with which he was familiar. Whereupon, appellant stated that he did not report to work because he was ill and had earlier informed a superior that he might not report for duty. When confronted with the denial on the part of that superior appellant stated that he did not call in to report his intended absence as required because he had taken some medicine which had caused him to oversleep. He finally admitted that the medicine had not been prescribed by a physician but that he took "Vick's Formula 44, Contac and a few other things that was around. . ."
*439 The rules and regulations of the Harbor Police as set forth in its manual, provide, in pertinent part: "A member shall be truthful in his conduct towards all persons." Chapter B, Art. 10(e); and "A member shall not knowingly make, or cause or allow to be made, a false or inaccurate oral report or written record of an official nature." Chapter B, Art. 15(d).
Assistant Superintendent Joseph Cannatella explained that Harbor Patrolmen, just as police officers, have the power to arrest and can by their actions cause an individual to receive severe criminal penalties. In the performance of their duties, it is essential that Harbor Patrolmen be truthful in all matters. He stated that appellant's resort to untruths surrounding the September 29, 1975 incident together with the falsity of his previous statements relating to the prior offenses satisfied him that appellant should be dismissed.
Appellant argues that the record fails to support the conclusion that he deliberately lied about his failure to report to work. We find that there is ample evidence in the record to support just such a conclusion. The plain and simple truth is that appellant overslept. He should have said so.
Lastly, appellant argues that his statement, if proved false, could not be construed to have affected or impaired the efficiency of the public service and therefore does not constitute a legal cause for disciplinary action. Leggett v. Northwest State College, 242 La. 925, 140 So.2d 5 (1962); and, Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422 (1959).
We have no quarrel with the rule announced in Leggett and Brickman, above. Simply stated, it requires that there must be a "real and substantial relation between the conduct of an employee and the efficient operation of the public service; otherwise, legal cause is not present . . ." and disciplinary action for such conduct is arbitrary and capricious as a matter of law.
Whether there is a real and substantial relation between a certain type of conduct and the efficiency of the public service is a question that must be decided on the particular facts of each case. Not all conduct, however disapproving, will or is likely to impede the efficiency of the public service. In the case of personal traits, the decision becomes more difficult.
The Commission found, and we agree, that there existed a real and substantial relation between the untruthful conduct complained of and the efficiency of the public service. We grant that a single incident such as that of September 29, 1975 might not be sufficient to establish such a relation; however, considering this latter incident together with the two prior occurrences, we can not say that the action of the appointing authority or the Commission was arbitrary or capricious.
For these reasons, the ruling of the Civil Service Commission is affirmed at appellant's costs.
AFFIRMED.