512 So.2d 533 (1987)
CITY OF LAFAYETTE, Plaintiff-Appellant,
v.
MUNICIPAL FIRE & POLICE CIVIL SERVICE BOARD OF the CITY OF LAFAYETTE, Defendant-Appellee.
In re Matter of John CARNES.
No. 86-628.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
L. Lane Roy of Roy & Hattan, Lafayette, for plaintiff-appellant.
Danny Landry, III, Diana Simon, Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and DOUCET, JJ.
GUIDRY, Judge.
The City of Lafayette appeals a judgment of the district court affirming a decision of the Municipal Fire and Police Civil Service Board (the Board) setting aside the termination from employment with the Lafayette *534 City Police Department (LPD) of Police Corporal John Carnes.
The termination of Cpl. Carnes began with a report from a private citizen to Assistant Lafayette Police Chief Zeringue on the morning of January 16, 1985. Sometime after 8:00 a.m. on that day, a woman called Asst. Chief Zeringue to complain that between 7:30 and 8:00 a.m. she had observed an officer in a marked patrol car near the intersection of Ambassador Caffery Parkway and Eraste Landry Drive transporting a young child in the front seat of the car without proper restraint. The caller identified the police car as unit number 54. Zeringue relayed the complaint "down the line" to Lt. James Credeur, the shift lieutenant, who identified the driver of the unit as Cpl. Carnes. At this time, it was determined that Cpl. Carnes was outside of his assigned zone. This information was transmitted to Sgt. James Melancon, Cpl. Carnes' immediate supervisor, who called the officer into the station.
Carnes arrived at the station at approximately 9:00 a.m. and reported to Sgt. Melancon in the watch commander's office. That office is a fairly public place in the station, being a high traffic area and containing some couches and a T.V. set. The discussion of the matter between Carnes and Melancon and later Lt. Credeur was held in this office with the door open and with intermittent traffic. Further, at least one additional officer, Cpl. Larry "Mac" Bailey, a member of the Review Board who recused himself, witnessed the discussion. Cpl. Bailey described the atmosphere and mood of the discussion between Carnes, Melancon and Credeur as casual and extremely informal. All parties agreed that at the end of this meeting, after Cpl. Carnes had been warned not to leave his assigned zone of patrol again without specific authorization from a supervisor, everyone thought the matter was closed. Two months later, on March 14, 1985, John Carnes was called into Chief Romero's office and terminated. At that time, Chief Romero delivered a letter to Carnes stating the reason for his termination.
On appeal, a majority of the Board found that the action taken by Chief Romero was not in good faith and for cause. That finding was affirmed by the district court. The City then took this appeal.
These proceedings were initiated pursuant to the provisions of La.R.S. 33:2501, which states in pertinent part:
"A. Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.
. . . . .
C. (1) After the investigation provided for in ... this Section, the board may, if the evidence is conclusive, affirm the action of the appointing authority. If they find that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period....
. . . . .
E. (1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and and unlimited *535 jurisdiction in civil suits of the parish wherein the board is domiciled.
. . . . .
(3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part...."
In a recent case very similar to the one before us, our brothers of the Fifth Circuit commented on the Constitutional protection afforded police officers facing disciplinary action:
"A civil service employee is afforded protection in disciplinary actions through La. Const. Art. 10 Sec. 8(A) which states in pertinent part: "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." The protection granted by the Louisiana Constitution is only against firing or other discipline without cause. City of Kenner v. Pritchett, 432 So.2d 971 (La.App. 5th Cir. 1983); Reboul v. Department of Police, 420 So.2d 491 (La.App. 4th Cir.1982); Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4th Cir.1978), writ denied 365 So.2d 247 (La.1978).
... [A] dismissal of a civil servant "for cause" is synonymous with legal cause. City of Westwego v. McKee, 448 So.2d 166 (La.App. 5th Cir.1984). The Louisiana Supreme Court defined legal cause in Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962).
"Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service."
The burden of proving legal cause before the Commission shall be on the appointing authority. City of Kenner v. Pritchett, supra; and Reboul v. Department of Police, supra. Thus, the appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service. Newman v. Department of Fire, 425 So.2d 753 (La.1983). If this is proven, then cause is established and there is no constitutional protection for that employee if he is so informed in writing of the cause for his disciplinary action. City of Kenner v. Pritchett, supra.

In the instant case, it was the duty of the Board to decide whether the appointing authority had good or lawful cause for taking disciplinary action, and, if so, whether the punishment imposed was commensurate with the dereliction. Guillory v. Dept. of Transp. & Devel., Etc., 475 So.2d 368 (La.App. 1st Cir. 1985)...."

Appointing Authority, Chief of Police For the City of Kenner v. Trippi, 499 So.2d 1177 (La.App. 5th Cir.1986), writs denied, 503 So.2d 22 (La.1987).
In Newman v. Department of Fire, 425 So.2d 753 (La.1983), the Louisiana Supreme Court stated:
"The appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Merchant v. Department of Finance, 391 So.2d 587 (La.App. 4th Cir.1980); cf. LSA-R.S. 49:964(G)(5). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. The appointing authority (Superintendent) must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service. La. Const. art. X, § 8; Leggett v. Northwestern State College, 242 La. 927,140 So.2d 5 (1962); Thornton v. Dept. of Health and Human Resources, 394 So.2d 1269 (La.App. 1st Cir.1981); Rodriguez v. Board of Commissioners, Port of New Orleans, 344 So.2d 436 (La.App. 1st Cir. 1977). As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission. Sanders v. Dept. of Health and Human Resources, 394 So.2d 629 (La. *536 App. 1st Cir.), writs denied, 399 So.2d 602 (La.1981)...."
Our review of the record satisfies us that the lax atmosphere of the initial meeting on this matter, as described by Cpl. Bailey and Cpl. Carnes, was indeed accurate. At this meeting, Cpl. Carnes readily admitted that he was transporting his young son to a babysitter due to the ill health of his wife and that the child's only restraint was the officer's arm. It appears that because of the informality of this meeting, some lighthearted remarks by Carnes to Lt. Credeur were later misconstrued as a denial by Carnes of his actions. The record clearly establishes that Carnes and Credeur had discussed Carnes' family situation on several prior occasions and that on each occasion, Lt. Credeur professed sympathy and understanding. Cpl. Carnes stated that he was under the impression that, because of his family situation and these prior discussions, Lt. Credeur had granted him "blanket" authorization to attend to family business, as emergencies arose, by simply notifying the dispatcher that he would be temporarily out of his zone. The record establishes that it was not uncommon for officers to either stop at their homes or leave their assigned zones of patrol after merely calling in to their dispatcher. On the morning in question, Carnes stated that he checked with the dispatcher before leaving his zone. The record is devoid of any evidence to the contrary. Although Lt. Credeur testified that no blanket authorization had been granted and that he had instructed Carnes to get permission before leaving his zone, the Board apparently believed Carnes was under the impression that such authorization had been given. We do not find such a conclusion to be manifestly erroneous.
The appointing authority urges that Cpl. Carnes, by being out of his zone of patrol, impaired the efficient and orderly operation of the L.P.D. Clearly, a police officer on duty who, without permission, leaves his zone of patrol impairs the efficient and orderly operation of the police department to some degree because, if an emergency arises, he would be unable to respond as quickly to citizens' needs within the patrol area. Apparently, the Board concluded that there was not a real and substantial relationship between Carnes' improper conduct and the efficient operation of the public service. There is certainly evidence in the record to support this conclusion. Sgt. James Melancon, immediate supervisor of Cpl. Carnes, testified as follows:
"Q. Now, if that's the case, isn't [sic] a fact that all you told him was just not for it to happen again?
A. I told him to getthat's right, I told him not to let this take place again. That he had to have permission to get out of his zone."
Lt. James Credeur, the shift supervisor, when asked whether he considered this infraction a serious matter, responded:
"I thought it serious enough to talk to him to restrain him to the side of town where his responsibilities were. I didn't think he needed any disciplinary actions at that time, but I needed to clarify so it would not occur in the future."
Finally, Major Broussard, the supervisor of Lt. Credeur, Sgt. Melancon and Carnes, upon being apprised of the matter, did not recommend termination because of a marked improvement in Carnes' attitude and his job performance.
John Carnes is not represented on appeal and has not filed a brief with this court. However, at the Board hearing, Carnes was represented by counsel who raised the question of whether Carnes had been denied constitutional due process protection during the termination process. This claim of denial of due process was based upon a holding of the United States Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The linchpin of the high court's decision was its interpretation of two sections of the Ohio Revised Code Annotated (§§ 124.11 and 124.34). La.R.S. 33:2500 grants the classified employees in Louisiana the same status and protection afforded Ohio civil servants under the involved statutes. In Loudermill, the court explained:

*537 "Respondents' federal constitutional claim depends on their having had a property right in continued employment....
If they did, the State could not deprive them of this property without due process.
. . . . .
Property interests are not created by the Constitution, `they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'
... The Ohio statute plainly creates such an interest. Respondents were `classified civil service employees,' Ohio Rev.Code Ann. § 124.11 (1984), entitled to retain their positions "during good behavior and efficient service," who could not be dismissed `except ... for... misfeasance, malfeasance, or nonfeasance in office,' § 124.34....
. . . . .
... The point is straightforward: the Due Process Clause provides that certain substantive rightslife, liberty, and propertycannot be deprived except pursuant to constitutionally adequate procedures....
An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." ...
We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."
. . .
This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.
. . . . .
... [T]he pretermination "hearing," though necessary, need not be elaborate. We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."...
. . . . .
The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story...."
Loudermill, supra, 105 S.Ct., at 1491-1495.
The Louisiana Supreme Court had occasion to address the issues raised in Loudermill, supra, in Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986). In Bell, appellants were challenging the reallocation or reclassification of their positions rather than disciplinary action. They sought to extend the due process requirements outlined in Loudermill to reallocation/reclassification actions. In refusing to extend the right of pre-deprivation notice in writing and a hearing to reallocations, the State Supreme Court reasoned that a reallocation or reclassifications of one's position is not a disciplinary sanction as it is in no way dependent on the employee's job performance. The court pertinently concluded:
"In disciplinary actions, due process concerns are heightened since the focus in such actions is in the individual employee. Evidence is taken, and the Director then enters a decision based on his findings. Meaningful procedural due process notions are furthered by allowing pre-deprivation (disciplinary action) notice in writing setting forth the causes for the action, and an opportunity to be heard. By providing an employee with these minimal procedural protections, an employee can prepare a defense, call witnesses on his own behalf, *538 testify himself, and cross examine opposing witnesses. These protections diminish the possibility of an erroneous deprivation prior to its occurrence. Such concerns are not meaningful in a reallocation."
(Emphasis ours).
Bell, supra, at 950.
Although the record clearly establishes that Cpl. Carnes received no pre-deprivation written notice and was not afforded a hearing after such written notice and prior to his termination, we find it unnecessary to decide this matter on constitutional grounds.
The appropriate standard of appellate review of actions by a Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. In the instant case, a majority of the members of the Board found that Carnes' termination by the appointing authority was not made in good faith or for cause. Our careful review of the record does not reveal this determination to be arbitrary or capricious.
For the reasons stated, the judgment of the district court upholding the action of the Municipal Fire and Police Civil Service Board of the City of Lafayette is affirmed. Costs of this appeal are taxed to the appellant.
AFFIRMED.