SAVOIE, Judge.
This case is a Civil Service appeal. Plaintiff, Timothy Frye, an L.S.U. Medical Center employee, appeals from the decisions of the Civil Service Commission Referee and the Civil Service Commission upholding his suspension without pay for one day.[1] He was suspended for failing to secure an electrical disconnect box which subsequently disappeared.
On appeal, plaintiff raises seven assignments of error:
1. The Appeals Referee erred in not finding that the Appellant had been denied a pre-disciplinary conference prior to being suspended.
2. The Appeals Referee erred in finding that in June of 1985 the Appellant was denied a merit step increase due to his alleged excessive use of leave and belligerent and unprofessional attitude in that said finding is not based on any evidence.
3. The Appeals Referee erred in finding that on June 23, 1986 the Appellant was allegedly reprimanded for his attitude toward his job in that there simply is no evidence to support this finding.
4. It was erroneous for the Referee to conclude that the Appellant did not secure the subject materials when the evidence clearly shows that he took those measures that were normally required of him in his day to day routine: particularly as was requested by his temporary supervisor on this project, Miguel Lopez.
5. The Appeals Referee was clearly wrong in concluding and/or inferring that the Appellant was only willing to pay for the replacement cost of the missing and/or stolen electrical disconnect box. The evidence is abundantly clear that the Appellant was never informed either by his immediate supervisor (Carlton Roy) or the Assistant Director (Froe-ba) that he had the option of replacing the missing item with a duplicate and/or comparable replacement of same.
6. The evidence clearly preponderates that the Appellant was the only witness with personal knowledge that there were other comparable electrical disconnect boxes available to the Appointing Authority to complete the assemblage of the lightpoles: consequently, the Appeals Referee was clearly wrong in finding otherwise.
7. As there is no presumption nor admission of guilt on the part of the Appellant by offering to pay for the missing and/or stolen electrical disconnect box, the Referee was manifestly wrong in concluding that he therefore must be *261 guilty of the charges leveled against him which resulted in his suspension.
ASSIGNMENT OF ERROR NO. 1
Plaintiff contends that he was denied due process because he did not have a presuspension hearing.[2] This court in Ayio v. Parish of West Baton Rouge School Board, 569 So.2d 234 (La.App. 1st Cir. 1990), recently held that a public employee was entitled to a due process hearing before being suspended indefinitely without pay. In deciding that Ayio was entitled to a presuspension hearing, we discussed due process as follows:
Exactly what process is due in a given case is dependent upon the peculiar facts present. Due process is not a technical conception with a fixed content regardless of the time, place and circumstances, but is a flexible standard which requires such procedural safeguards as a particular situation demands.
Relying on Cleveland Bd. of Educ. v. Loudermill, appellant argues the dictates of due process required he be given notice and an opportunity to be heard prior to his suspension. In Loudermill, the Supreme Court held that a public employee who had a property interest in continued employment must be given notice and an opportunity to respond prior to his termination. We believe a determination as to whether an employee is entitled to the same protections with regard to a suspension for cause requires a balancing of the following competing interests delineated by the Supreme Court in Loudermill: 1) the private interest affected by the official action in question; 2) the risk of an erroneous deprivation of such interest through the procedure utilized; and, 3) the Government’s interest in the expeditious removal of unsatisfactory employees and the avoid-anee of administrative burdens.
Ayio, 569 So.2d at 236.
We weighed the three competing interests in Ayio as follows. As to the private interest affected, we found that the deprivation of income due to the suspension was severe, particularly where Ayio’s suspension without pay was of indefinite duration, making it practically indistinguishable from a termination in terms of its immediate effect on the employee. As to the risk of erroneous deprivation, we found that the risk was as great in the case of a suspension as in the case of termination, particularly where numerous factual disputes existed as in Ayio’s case. Based on these two factors we concluded that “the reasoning of Loudermill required that appellant be given notice and an opportunity to respond prior to his suspension in this ease.” As to the government’s interest, we noted that the employer’s interest in the immediate suspension of Ayio did not outweigh his private interest in continuing to receive his salary. In this respect, we noted that at least some of the instances of incompetence with which Ayio was charged occurred several months before he was suspended, which indicated no exigency was felt to exist by the employer.
We find the Ayio case distinguishable from this case. In this case, the private interest affected is a deprivation of income for only one day, quite unlike the complete loss of income due to a termination or an indefinite suspension without pay. In support of this point is the U.S. Supreme Court’s statement in Loudermill, 105 S.Ct. at 1493, that “We have described ‘the root requirement’ of the Due Process Clause as being ‘that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.’ ” (Ci *262 tations and footnote omitted; second emphasis ours). Moreover, in Bell v. Department of Health and Human Resources, 483 So.2d 945, 951 (La.), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986), in determining whether some downwardly reallocated employees were entitled to a due process pre-reallocation notice and hearing, our supreme court considered that the employees were not deprived “of a significant property interest, a prerequisite to any heightened due process inquiry,” unlike the Loudermill situation. (In Bell, while the reallocated employees were challenging the reallocation, their pay was frozen; while they no longer earned merit raises in the former pay range, they did earn increases at their new (lower) pay range.)
While the risk of erroneous deprivation in some suspensions may be as great as in terminations, in this case the plaintiff admitted that he had failed to secure the missing equipment for which he was responsible, leading to its loss. The most troubling factor is the testimony of the supervisor who suspended the plaintiff that he would not have done so had the plaintiff personally replaced the disconnect; the plaintiff did forward a check for the value of the disconnect to the supervisor, but the supervisor did not accept the check due to notations on it. According to the plaintiff, he was unaware of the supervisor’s desire that he secure a new disconnect rather than simply furnish a check for its value; the supervisor testified that he communicated this wish to the plaintiffs immediate supervisor, not to plaintiff directly. Perhaps had there been some presuspension “hearing”, the matter would have been resolved by the plaintiff furnishing a new disconnect. However, even with this factor, we cannot say that the private interest of one day’s pay in this case is great enough to require due process notice and hearing; therefore, we find the plaintiff’s first Assignment of Error has no merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
The plaintiff also assigns as error the Referee’s first two findings of fact: (1) that on June 27, 1985, plaintiff was denied a merit step-increase due to his excessive use of leave and belligerent and unprofessional attitude and (2) that on June 23, 1986, the plaintiff was reprimanded for his attitude towards his job.
The Referee based these factual findings on sentences in a memo dated September 16, 1986 from Mary A. Scheib, Personnel Tech. 1, Physical Plant, to Stan Tefft, Jr., Assistant Director, Human Resource Mgmt. The memo concerned the plaintiff's one day suspension, but referred to these prior actions. A copy of the reprimand was attached to the memo; the memo was attached to the confirmation of the suspension sent to the plaintiff.
The mention in the letter of suspension of the prior reprimand and denial of the merit increase was proper because these prior actions are relevant to the issues of whether the plaintiff was suspended for cause and whether the punishment was appropriate. Howard v. Housing Authority of New Orleans, 457 So.2d 834 (La.App. 1st Cir.1984); Stiles v. Department of Public Safety, Driver’s License Division, 361 So.2d 267 (La.App. 1st Cir.1978).
Although mention in the letter of suspension of the prior disciplinary actions was clearly proper, the evidence only supported a factual finding that the plaintiff had been reprimanded because a copy of the reprimand was introduced into evidence and the person who issued the reprimand testified as to it. No evidence was introduced to show the denial of the step-increase. However, while this factual finding was not supported by proper evidence, the Referee did not base her finding that plaintiff failed to secure the disconnect on this particular fact, as there was more than ample evidence on which to base this finding. Likewise, we do not believe this factual finding of a denial of a pay raise was essential to the finding that a one day suspension was appropriate. Therefore, plaintiff’s Assignments of Error Nos. 2 and 3 have no merit.
ASSIGNMENTS OF ERROR NOS. 4, 5, AND 6
The remaining assignments of error concern the Referee’s factual findings. Our *263 standard of review was set forth in Walters v. Department of Police of New Orleans, 454 So.2d 106, 114 (La.1984), as follows:
In reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion.
(Citations omitted).
We have thoroughly reviewed the transcript and we cannot say that the Referee’s findings of fact are clearly wrong or manifestly erroneous. We attach a copy of the Referee’s findings of fact to this opinion as Exhibit A. Therefore, the plaintiff’s remaining assignments of error have no merit.
. For these reasons, the decision of the Civil Service Commission Referee is affirmed at the plaintiff’s costs.
AFFIRMED.
EXHIBIT A
In re: Appeal of Timothy Frye
(Louisiana State University
Medical Center in New Orleans)
State of Louisiana
Civil Service Commission
Docket No. 5999
Filed Nov. 5, 1987
DECISION
STATEMENT OF THE APPEAL
Appellant is employed by the Louisiana State University Medical Center in New Orleans as an Electrician and is serving with permanent status.
By letter dated September 22, 1986, over the signature of Stanley J. Tefft, Jr., Assistant Director of Human Resource Management, appellant was advised that the verbal suspension levied against him effective Friday, September 19, 1986, was being confirmed for one day. Appellant was further advised to return to work on Monday, September 22, 1986. As cause for this action, the letter states that on September 4, 1986, appellant was assigned to assist with the installation of electrical services on two light poles to be used at the parking lot which was the former Greyhound Depot site; that as only one of the two light poles was completed that day, it was decided to have appellant return downtown to assist with the completion of the project the next day; that the materials required to complete the job were left in appellant’s possession for safe-keeping and as a matter of convenience; and that appellant failed to secure the materials overnight, resulting in the loss of a disconnect, which loss was reported to the University Police; that upon investigating the incident, it was determined that appellant had indicated to his immediate supervisor that he debated the necessity of locking up the materials remaining for the completion of the project; and that appellant was informed that due to his failure to secure the materials, he would be held responsible for the loss. In support of the severity of the action taken, the letter of suspension states that on June 27,1985, appellant was denied a merit increase due to his excessive use of leave, belligerent attitude, and unprofessional attitude; and that on June 23, 1986, appellant was reprimanded for his attitude toward his job.
On October 15, 1986, counsel on behalf of appellant filed an appeal. As the action complained of, reference is made to the suspension. Appellant states that the allegations contained in the letter of suspension are false and are inaccurate. Appellant states further that no predisciplinary conference was held and afforded to him; that consequently, the disciplinary action taken is illegal and should be dismissed with all costs and attorney’s fees east against the appointing authority; that the reasons for the disciplinary action are unclear, vague and ambiguous; that appellant *264 therefore, cannot respond to any or all of the grounds urged; that there is no basis upon which to discipline the appellant; that there is no allegation that appellant’s conduct in any way disrupted the services performed by the appointing authority; that there is no statement nor allegation made as to the amount of the loss sustained by the appointing authority; that there is no statement in the letter of suspension indicating that the lost or misplaced material was specifically intrusted to or in the possession of the appellant at the time of the loss; that the appointing authority is es-topped from alleging any incidents occurring prior to appellant’s having been granted a merit increase which became effective on June 23, 1986; and, that for these reasons, the allegations stated in support of the suspension are stale and are not germane to the issues before the Commission. Thereafter, appellant alleges discrimination and states facts which he believes will support that claim. As relief, appellant requests recision of the suspension, back pay and all emoluments of his position and a reasonable attorney’s fee.
A public hearing was held in New Orleans on August 12, 1987, before a Referee appointed by the Commission. Based on the evidence presented and pursuant to Article X, Section 12(A) of the Louisiana Constitution of 1974, as amended in 1982, the Referee makes the following findings.
FINDINGS OF FACT
1. On June 27, 1985, appellant was denied a merit step-increase due to his excessive use of leave and belligerent and unprofessional attitude.
2. On June 23, 1986, appellant was reprimanded for his attitude toward his job.
3. On September 4, 1986, Mr. Miguel Lopez, Facilities Maintenance Director III, assigned appellant the task of assembling two light poles which were to be placed at the old Greyhound Bus Depot. The light poles were to be assembled at the LSU Medical Center Dental School.
4. Mr. Lopez is generally not appellant’s immediate supervisor. However, appellant was required to follow Mr. Lopez’s direction for purposes of this project. When Mr. Lopez told appellant of his assigned duty for the day, appellant asked for assistance. Therefore, Mr. Lopez assigned Mr. A1 Cason, another Electrician II, to assist appellant. Both Mr. Lopez and Mr. Cason are employed by the Louisiana State University System but their job location is downtown New Orleans at the Medical Center; while, appellant’s duty station is located at the Dental School.
5. Mr. Lopez informed appellant that if the project of assembling the light poles could not be completed in one day appellant was not to leave the light poles or any of the materials used to assemble same unsecured. Appellant was told to secure the materials overnight in a storage area.
6. Not only did Mr. Lopez personally request that appellant store the materials before leaving for the day but, Mr. Lopez also told Mr. Cason to advise appellant that he was to secure the materials before leaving.
7. Both Messrs. Lopez and Cason brought materials to the Dental School to be used by appellant in assembling the light poles. Mr. Lopez had advised Mr. Cason that he was to leave the Dental School between 3:30 p.m. and 4:00 p.m. so that he could return to his regular duty station downtown where he could sign out properly prior to the end of his shift.
8. Mr. Cason was also to leave appellant in charge of the materials. Therefore, when Mr. Cason and appellant began completion of the project the following day, the materials would already be at the Dental School, ready for the men to continue their work.
9. On the following day, it was discovered that one of the parts needed to assemble the light poles, a disconnect, was missing. The disconnect is approximately six inches wide, eight to ten inches long, three to four inches deep and weighs approximately four to five pounds. The disconnect costs approximately $28.65. Assemblage of the light poles was delayed approximate *265 ly two to three days because the disconnect was missing and there was no other comparable disconnect at the Dental School and another one had to be ordered.
10. Appellant testified that it was his responsibility to lock up all the materials at the end of the day and that he did this.
11. However, appellant’s immediate supervisor Carlton Roy, Building Maintenance Superintendent II, testified that on the day following the assemblage of the light poles, he spoke with appellant; that appellant told him that he [appellant] had placed the disconnect on a desk in the Maintenance Shop; and that when he [appellant] returned later, the disconnect was gone.
12. The desk on which the disconnect was placed in an open area against the wall in the Maintenance Shop. This area is accessible to all of the maintenance people as well as to any other employee or individual who might casually pass through the Maintenance Shop.
13. Mr. Roy testified that appellant could have stored the disconnect in a locker located on the inside of the Maintenance Shop at the Dental School.
14. Initially, appellant did not offer to pay for the disconnect. Subsequently, however, appellant tendered a check to Mr. Roy for the cost of replacing the disconnect and Mr. Roy gave this check to Mr. Carl Froeba, Assistant Director of the Physical Plant at the School of Dentistry.
15. When Mr. Froeba received the check from appellant covering the cost of replacing the disconnect, he personally objected to the notations appellant had placed on the check. Mr. Froeba did not think that he would be able to negotiate the check and for this reason, he recommended a three-day suspension. Mr. Froeba testified that he recommended the suspension because the disconnect was missing, that appellant had failed to secure the disconnect and because at the time the disconnect was misplaced, it was in appellant’s care. Mr. Froeba further testified that had the check covering the cost of the disconnect been negotiated, he would not have recommended disciplinary action be taken against appellant.
16.Each employee of the Dental School is assigned two lockers. One locker is to be used to secure personal belongings and the other locker is to be used for equipment. Only the employee and Mr. Roy have a key to the locker which would contain equipment used by the employee.
CONCLUSIONS OF LAW
The Referee concludes that the appointing authority has sustained the burden of proving the charges against appellant and that the disciplinary action taken was warranted in this case. Mr. A1 Cason, who is generally stationed at the Louisiana State University Medical Center, was assigned to assist appellant at the Dental School in assembling two light poles. The Dental School is appellant’s regularly assigned duty station. Appellant testified that at the conclusion of Mr. Cason’s work day, the supplies were left in his possession to be secured. The Referee finds appellant’s testimony, that he secured all of the materials, less than credible in light of Mr. Roy’s testimony that appellant told him that he had placed the disconnect on a desk in an open area in the Maintenance Shop. The conversation between Mr. Roy and appellant occurred the day following assemblage of the disconnect and this statement was made to Mr. Roy by appellant when it was discovered that the disconnect was missing. Additionally, this conclusion is buttressed by appellant’s offer to pay to replace the disconnect. Appellant was never charged with theft nor did anyone believe that he had stolen the item. However, appellant’s superiors believe that inasmuch as the materials were left in his care at the end of the day, he had the responsibility for seeing that they were properly secured before leaving for the day.
Having failure to do so, the Referee finds the one-day suspension to be warranted in this case. Accordingly, this appeal is denied.
*266 s/ Sheral A. Curry
Sheral A. Curry
Civil Service Commission Referee

. When the plaintiff appealed the Referee’s findings to the Commission, the Commission read the transcript and reviewed the Referee’s findings. The Commission found no error and denied the plaintiffs application for review. The Commission did not issue written findings of fact and conclusions of law. Therefore, any references to factual findings in this opinion are to the Referee’s factual findings.

. Plaintiff cites four cases in support of his contention that he is entitled to a presuspension hearing: Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); City of Lafayette v. Municipal Fire & Police Civil Service Board, 512 So.2d 533 (La. App. 1st Cir.1987); Maurello v. Department of Health and Human Resources, Office of Management Finance, 510 So.2d 458 (La.App. 1st Cir.), writ denied, 514 So.2d 460 (La.1987); and Murray v. Department of Revenue and Taxation, 504 So.2d 561 (La.App. 1st Cir.1986), writs denied, 504 So.2d 880, 882, 883 (La.1987). Yet, all of these cases deal with hearings prior to termination, not prior to suspension. In Murray, the plaintiff had been suspended and subsequently terminated, yet he had only appealed the lack of a pre-termination hearing and not the lack of a presuspension hearing. The plaintiff only appealed the suspension on the merits.