569 So.2d 234 (1990)
Milton AYIO
v.
PARISH OF WEST BATON ROUGE SCHOOL BOARD.
No. CA 89 1277.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*235 Robert Monahan, Baton Rouge, for plaintiff-appellant, Milton Ayio.
Neal Harmon, Asst. Dist. Atty., 18th Judicial Dist., Parish of West Baton Rouge, Port Allen and T. Barry Wilkinson, Plaquemine, for defendant-appellee, Parish of West Baton Rouge School Bd.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This appeal involves the review of a decision by a local school board to terminate a tenured bus driver.
The pertinent facts of this matter are as follows. On February 18, 1987, the West Baton Rouge Parish School Board (Board) passed a resolution suspending appellant, Milton Ayio, without pay from his position as a tenured bus operator, based on various allegations of incompetency. The resolution also authorized the Superintendent of Schools to proceed with formal charges against appellant. Following a hearing on March 25, 1987, the Board terminated appellant's employment, after which appellant filed a petition in district court for judicial review of the Board's decision. The district court ultimately rendered judgment upholding the Board's decision and appellant now appeals.
On appeal, appellant contends he was deprived of due process in that: 1) he was suspended without being given prior notice and an opportunity to respond thereto; and, 2) his pretermination hearing was not held before a neutral, unbiased tribunal since the Board had already evidenced bias and prejudgment of his case in that it had previously suspended him without pay.
La.R.S. 17:493 A provides that permanent bus drivers can be removed from their positions only on certain enumerated *236 grounds, including willful neglect of duty, incompetence, immorality or drunkenness on duty, among others. In providing that tenured drivers can be removed only on enumerated grounds, La. R.S. 17:493 confers a property right in continued employment upon such drivers. See, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-9, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); Vanderwall v. Horner, 635 F.Supp. 688, 694 (E.D.La. 1986), cert denied, 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988); Murray v. Department of Revenue and Taxation, 504 So.2d 561, 564 (La.App. 1st Cir.1986), writs denied, 504 So.2d 880, 882 & 883 (1987). A public employee with a property right in continued employment may not be deprived of that right without due process of law. Casse v. Sumrall, 547 So.2d 1381 (La.App. 1st Cir.), writ denied, 551 So.2d 1322 (1989). Exactly what process is due in a given case is dependent upon the peculiar facts present. Casse, supra. Due process is not a technical conception with a fixed content regardless of the time, place and circumstances, but is a flexible standard which requires such procedural safeguards as a particular situation demands. Bell v. Dept. of Health and Human Resources, 483 So.2d 945 (La.1986), cert denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986). However, an essential requirement of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Id.
Relying on Cleveland Bd. of Educ. v. Loudermill, appellant argues the dictates of due process required he be given notice and an opportunity to be heard prior to his suspension. In Loudermill, the Supreme Court held that a public employee who had a property interest in continued employment must be given notice and an opportunity to respond prior to his termination. We believe a determination as to whether an employee is entitled to the same protections with regard to a suspension for cause requires a balancing of the following competing interests delineated by the Supreme Court in Loudermill: 1) the private interest affected by the official action in question; 2) the risk of an erroneous deprivation of such interest through the procedure utilized; and, 3) the Government's interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens. Loudermill, 105 S.Ct. at 1493; also see, Bell, 483 So.2d at 950; Casse, 547 So.2d at 1385.
Even though this case involved a suspension rather than a termination, the private interest at stake was of major importance. As observed by the court in Bell, "... the significance of the private interest in retaining a previous level of earning capacity cannot be gainsaid." 483 So.2d at 950. The courts have consistently recognized the severity of depriving a person of income. Loudermill, supra at 1494; Bell, supra at 950. The deprivation was of even greater significance in this case since appellant's suspension without pay was of indefinite duration, pending resolution of the charges against him. Under these circumstances, we see little practical distinction between the termination in Loudermill and appellant's indefinite suspension without pay in terms of its immediate effect on the employee.
Secondly, the risk of an erroneous deprivation seems as great in the case of a suspension as in the case of a termination for cause, particularly in a case such as the present one involving numerous factual disputes. We note in this respect that the fact that the Board subsequently found cause to terminate appellant after holding a hearing is not dispositive of this concern, since the right to a hearing is not founded on a demonstration of certain success. Loudermill, 105 S.Ct. at 1494.
Given the similarities of the concerns present in both cases, we conclude the reasoning of Loudermill required that appellant be given notice and an opportunity to respond prior to his suspension in this case. As in Loudermill, we do not believe the Board's interest in the immediate suspension of appellant outweighed his private interest in continuing to receive his salary. In this respect, we note that at least some of the instances of incompetence with which appellant was charged occurred several *237 months before he was suspended, which indicates no exigency was felt to exist by the superintendent or the Board. Further, even if there was a belief that appellant's continued active employment presented a safety hazard, this problem could have been avoided by suspending him with pay pending an opportunity for him to respond to the charges.
While we conclude that appellant was entitled to notice and a presuspension opportunity to respond under the circumstances of this case, we emphasize that a presuspension "hearing" need not be elaborate. Loudermill, 105 S.Ct. at 1495. Nor does it need to definitively resolve the propriety of the proposed action. Basically, it need only provide the employee with an opportunity to present his side of the story, either orally or by written response, as an initial check against arbitrary decisions. Id. Accordingly, we do not believe the administrative burden of providing such an opportunity to employees prior to a suspension for cause would be great.
For the foregoing reasons, we set aside appellant's suspension without pay and award him the wages he otherwise would have earned during his period of suspension from February 18, 1987, until his termination. Since the record does not establish the amount of these wages, this matter is remanded to the district court, which is hereby ordered to receive evidence enabling it to make this determination.
Lastly, appellant argues the "procedures embodied in LARS [sic] 17:493, as implemented by the West Baton Rouge Parish School Board, were arbitrary, capricious and denied him the opportunity to be heard by a neutral hearing officer" as required by the dictates of due process. Appellant contends the fact that the Board suspended him without pay pending resolution of the charges against him indicated they were biased and had already prejudged the case before his termination hearing was even held.
Procedural due process requires that all proceedings directed toward the deprivation of life, liberty or property be conducted in a manner consistent with essential fairness. Grimmer v. Beaud, 537 So.2d 299 (La.App. 1st Cir.1988), writ denied, 538 So.2d 613 (1989). As stated by the United States Supreme Court in In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955):
A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." 75 S.Ct. at 625
In the present case, we find nothing inherently unfair in the procedures provided in La.R.S. 17:493.[1] In fact, the two-step *238 procedure followed by the Board in this instance in first suspending Ayio without pay pending investigation and then subsequently holding a termination hearing on the same charges is not expressly provided for in R.S. 17:493. Actually, appellant's argument focuses more on the procedure followed in practice by the Board rather than on any defect in the statute.
We might have had some concern in this respect regarding prejudgment of the case if the Board had held a hearing on the merits before suspending Ayio and had suspended him upon concluding they were well-founded. However, the record is clear that the Board did not hear any evidence on the merits, but was merely presented with the charges against Ayio before it arbitrarily suspended him.[2] Thus, the Board did not consider the merits of the charges but merely decided that a suspension was warranted pending investigation.
Further, our thorough examination of the transcript of the termination hearing indicates it was conducted in a manner entirely in keeping with fairness to the parties and that the Board was conscientious in attempting to arrive at a fair decision. The hearing lasted more than seven hours and involved twenty witnesses, as well as numerous objections by both parties, which appear to have been fairly and impartially ruled on by the Board. Our review of the record has failed to reveal any indication of bias by the Board. To the contrary, we believe appellant received a full and fair hearing, conducted for the express purpose of ascertaining the truth of the allegations made against him. This assignment of error is without merit.
For the above reasons, that portion of the Board's decision suspending appellant is reversed and he is awarded back pay for the period of time between his suspension and subsequent termination. This matter is remanded to the trial court for the purpose of determining the amount of back wages due. The Board's decision terminating appellant is affirmed. Appellant is to pay all costs of appeal.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] This provision provides, in pertinent part, as follows:

A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance, or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish or city, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes.
B. All hearings hereunder shall be private or public, at the option of the operator affected thereby. At least twenty days in advance of the date of the hearing the superintendent, with approval of the school board, shall furnish the affected operator a copy of the written grounds on which said abolition, discontinuance, or consolidation of routes is sought. The operator affected shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the operator. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
[2] Ironically, we have already decided herein that this arbitrary decision violated Ayio's due process rights with respect to his suspension. However, we are here concerned with the issue of whether his right to due process was violated with respect to his termination. These are two separate and distinct issues.