906 So.2d 646 (2005)
Ted DELAHOUSSAYE
v.
BOARD OF SUPERVISORS OF COMMUNITY AND TECHNICAL COLLEGES.
No. 2004 CA 0515.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
*647 J. Isaac Funderburk, Nancy Dunning, Abbeville, Counsel for Plaintiff/Appellee/2nd Appellant Ted Delahoussaye.
Charles C. Foti, Attorney General, Katherine M. Whitney, Assistant Attorney General, Counsel for Defendant/1st Appellant Board of Supervisors of Community and Technical Colleges.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The defendant-appellant, the Board of Supervisors of Community and Technical Colleges (the Board), appeals a summary judgment declaring unconstitutional a provision of its removal policy applicable to its tenured employees formerly employed by *648 the Board of Elementary and Secondary Education (BESE). The plaintiff-appellant, Ted Delahoussaye, separately appeals that portion of the judgment declaring that he is not entitled to conduct discovery pursuant to the Louisiana Code of Civil Procedure in administrative proceedings prior to a hearing on his removal. We reverse the judgment in part, amend, and affirm it in part.

FACTUAL AND PROCEDURAL BACKGROUND
Ted Delahoussaye, the plaintiff, is a tenured employee of the Board, and assigned as an instructor at the Louisiana Technical College-Lafayette Campus.[1] Based upon formal written complaints from four students received between December 11 and 14, 2001, he was informed by letter on December 17, 2001 that he was placed on "administrative leave" without pay effective December 18, 2001, pending investigation of "allegations of sexual harassment."[2] On December 19, 2001, the Board held a post-suspension hearing, during which Mr. Delahoussaye was informed of the nature of the complaints made and the reasons for the action taken, and afforded an opportunity to respond in his own defense.
After further investigation of the complaints, another meeting was held on May 17, 2002, at which time Mr. Delahoussaye was advised that a charge for his removal from employment was being instituted. Chancellor William J. Roden formally advised Mr. Delahoussaye by letter of the same date of the intended proceeding, based upon "willful neglect of [his] duties as an instructor." In the letter, Chancellor Roden acknowledged the findings of the Human Resources office that the alleged conduct did not appear to constitute illegal racial or sexual discrimination or harassment. Nevertheless, it was concluded that the conduct, consisting of offensive statements made during the course of classroom instruction, violated the "standards of conduct required of instructional personnel" and created a detrimental learning environment. Finally, Chancellor Roden advised Mr. Delahoussaye that he would remain on administrative leave without pay pending the resolution of the charge for removal.
Mr. Delahoussaye was subsequently advised by letter dated September 2, 2002, that the scheduled date for the removal hearing was October 17, 2002. Through counsel, he propounded interrogatories and a request for production of documents to the Board, and requested the issuance of subpoenas prepared for the depositions of the four complaining students.
By letter dated September 30, 2002, the Board's counsel advised Mr. Delahoussaye's counsel of its position that the proceeding was not subject to the Louisiana Administrative Procedures Act or the discovery provisions of the Louisiana Code of Civil Procedure, and that the Board would not respond to the discovery interrogatories or the request for production of documents.
Due to the effects of Hurricane Lili on Lafayette and Vermilion Parishes, the parties agreed to continue the scheduled removal hearing without date. On November 14, 2002, Mr. Delahoussaye instituted the present declaratory judgment and mandamus action, seeking a judicial declaration of the unconstitutionality of *649 the Board's imposition of leave without pay under its policy, as well as a writ of mandamus restoring his salary and benefits retroactive to the date of suspension. Additionally, he sought declaratory judgment recognizing his right to engage in discovery under the provisions of the Louisiana Code of Civil Procedure prior to the hearing on his removal.
By motion filed on August 12, 2003, Mr. Delahoussaye moved for summary judgment in his favor. The motion was heard on October 20, 2003. The trial court rendered judgment granting the motion in part on the issue of the constitutionality of the Board's action, but denying it on the discovery issue. Its original judgment in that regard was signed on November 7, 2003, but an amended judgment to the same substantive effect was signed on December 23, 2003, for the purpose of compliance with La. R.S. 13:5112(A). From that judgment, both the Board and Mr. Delahoussaye have appealed.

STANDARDS OF REVIEW
The judgment before us is a summary judgment rendered in an action for declaratory judgment. Louisiana Code of Civil Procedure article 1871 provides that a declaratory judgment "shall have the force and effect of a final judgment or decree." Louisiana Code of Civil Procedure article 1877 further provides that declaratory judgments "may be reviewed as other orders, judgments, and decrees." Accordingly, the character of this action as one seeking declaratory judgment does not affect the standard of review of the summary judgment. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, pp. 4-5 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 717.
A reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless they are found to be arbitrary, capricious, or manifestly contrary to its rules and regulations. In The Matter of Recovery I, Inc., 93-0441 (La.App. 1st Cir.4/8/94), 635 So.2d 690, 696, writ denied, 94-1232 (La.7/1/94), 639 So.2d 1169.
Appellate review of a summary judgment is a de novo review based upon the evidence presented in the trial court, using the same criteria used by the trial court in deciding whether summary judgment is appropriate. Simmons v. Berry, 98-0660, p. 4 (La.App. 1st Cir.12/22/00), 779 So.2d 910, 913-14.

ASSIGNMENTS OF ERROR
The Board appeals, contending that the trial court committed legal error in relying upon Louisiana jurisprudence relating to tenured employees governed by Title 17 of the Louisiana Revised Statutes, as the Board is a constitutionally-created higher education board not subject to such provisions, and in finding that the Board's action in suspending Mr. Delahoussaye without pay deprived him of due process.
In his appeal, Mr. Delahoussaye assigns as error the trial court's ruling that he was not entitled to conduct pre-removal discovery under the provisions of the Louisiana Code of Civil Procedure.

DISCUSSION
The Board is a constitutionally-created higher education board charged with the management of public vocational-technical colleges and community colleges. La. Const. Art. 8, § 7.1. As such, it is conferred with self-executing (i.e., enforceable without supplemental legislation), exclusive administrative authority *650 over the learning institutions within its jurisdiction. See Board of Elementary and Secondary Education v. Nix, 347 So.2d 147, 152 (La.1977). The Board thus has authority to adopt rules and regulations governing the internal management of its learning institutions without legislative consent or approval. See Grace v. Board of Trustees for State Colleges and Universities, 442 So.2d 598, 601 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1223 (La.1984). See also La. R.S. 17:1871(B)(1).
Pursuant to its constitutional authority, the Board adopted a general personnel "leave" policy, LCTCS Policy II.3.003, defining the various types of leave available to its employees, including annual leave, faculty leave, sick leave, and military leave, as well as the categories of employees eligible for each type. "Administrative leave" is applicable to all of its unclassified employees, whether tenured or nontenured. It is broadly described as:
L. Administrative Leave. Upon recommendation of the Chancellor, approval by the System President and notification of the Board of Supervisors, an employee may be required to take leave with pay or leave without pay for a specific or indefinite period of time whenever, in the System President's discretion, such action would be in the best interest of the system.
By the adoption of La. Const. Art. 8, § 7.1 in 1998, the system of public vocational-technical colleges and community colleges was transferred from the jurisdiction of the Board of Elementary and Secondary Education (BESE) to the Board, effective July 1, 1999.[3] Thus, tenured instructors at the Louisiana Technical College's various campuses came under the purview of the Board, and were no longer governed by the statutes applicable to tenured BESE employees. For the express purpose of ensuring that the transferred tenured employees "retain all property interests and due process interests [sic] acquired by them prior to their transfer," the Board adopted a removal policy, LCTCS Policy II.3.021, applicable only to employees transferred from the jurisdiction of BESE to the Board's jurisdiction and tenured prior to the effective date of the transfer. This removal policy essentially tracks in most respects the language of La. R.S. 17:542(A),[4] but also purports to authorize the following action:
B. If the Chancellor determines that the best interest of the LTC is served by removing the employee from his/her employment duties following notice of the charge of removal, he may, after receiving the approval of the President of the Louisiana Community and Technical College System ("the President") and notification to the Board, place the employee on leave, with or without pay, pending the resolution of the matter by the personnel committee. (Emphasis supplied.)
Our review of the removal policy leads us to conclude that it relates to permanent removal from employment (termination), *651 as opposed to temporary removal from duties (suspension), although it authorizes imposition of lesser disciplinary sanctions, short of termination, following notice and hearing. The dual meaning and use of "removing" and "removal" unfortunately may lead to some confusion, as we discuss infra.
The Fourteenth Amendment to the United States Constitution prohibits a state from depriving a person "of life, liberty, or property, without due process of law." Article 1, § 2 of the Louisiana Constitution provides the same protections. To claim the protections of due process, a claimant must show the existence of some property or liberty interest which has been adversely affected by state action. Johnson v. Southern University and A & M College, 00-2615, p. 6 (La.App. 1st Cir.12/28/01), 803 So.2d 1140, 1144-45. The Louisiana Supreme Court has unequivocally stated that even a temporary, nonfinal deprivation of property is nonetheless a "deprivation" within the contemplation of the Fourteenth Amendment and entitled to due process protection. Fields v. State, Through Department of Public Safety and Corrections, 98-0611, p. 11 (La.7/8/98), 714 So.2d 1244, 1253, citing Paillot v. Wooton, 559 So.2d 758, 760 (La. 1990). The law is likewise clear that a tenured college instructor possesses a property interest in his position which requires due process protection under both the federal and state constitutions. Jones v. Southern University and A & M College, 96-1430, p. 7 (La.App. 1st Cir.5/9/97), 693 So.2d 1265, 1269.
In the leading case of Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court concluded that a public employee dismissable only for cause, such as a tenured employee, is generally entitled to at least a limited hearing prior to his termination in order to satisfy procedural due process, in order to provide the employee an opportunity to tell his side of the story, to be followed by a more comprehensive post-termination hearing. In Loudermill, the Supreme Court expressly recognized that "in those situations where the employer perceives a significant hazard in keeping the employee on the job [pending a pretermination hearing], it can avoid the problem by suspending with pay." Loudermill, 470 U.S. at 544-45, 105 S.Ct. at 1495.
In Gilbert v. Homar, 520 U.S. 924, 929-30, 117 S.Ct. 1807, 1811-12, 138 L.Ed.2d 120, the Supreme Court clarified its Loudermill holding by noting that the language quoted immediately above was only dictum, and there is no absolute constitutional rule requiring a presuspension hearing prior to the suspension of a tenured employee without pay. It explained that due process is not a fixed technical concept but rather a flexible concept providing "such procedural protections as the particular situation demands," and does not always require a hearing prior to the initial deprivation of a property interest. Gilbert, 520 U.S. at 930, 117 S.Ct. at 1812. Citing its earlier decision of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court stated that three distinct factors must be balanced in determining what constitutes due process in such cases:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest. (citation omitted)
Gilbert, 520 U.S. at 931-32, 117 S.Ct. at 1812. It also held that in determining what process may be due in a given situation, *652 the length and the finality of the deprivation must be considered. Gilbert, 520 U.S. at 932, 117 S.Ct. at 1813.
The United States Supreme Court has recognized that de minimis property interests do not trigger procedural due process protections. See Goss v. Lopez, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). In the context of employee rights, a two-day suspension with pay has been held as not involving a "measurable property interest." Pitts v. Board of Education Utah School District 305, Salina, Kansas, 869 F.2d 555, 556 (10th Cir.1989). Similarly, a one-week suspension with pay was held de minimis and not violative of procedural due process. Hardiman v. Jefferson County Board of Education, 709 F.2d 635, 638 (11th Cir.1983). No due process violation was found where an employee was demoted without a hearing but subsequently reinstated with full back pay. Sewell v. Jefferson County Fiscal Court, 863 F.2d 461, 467 (6th Cir.1988). This court has even held that due process did not require a presuspension hearing where an employee received a one-day suspension without pay, a deprivation which we did not consider significant enough to invoke the Loudermill due process inquiry. Frye v. Louisiana State University Medical Center in New Orleans, 584 So.2d 259, 261-62 (La. App. 1st Cir.1991).
The trial court's judgment declared the Board's administrative leave policy section unconstitutional in part, using the following decretal language:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein declaring unconstitutional the "without pay" provision of Section B to [sic] the LOUISIANA TECHNICAL COLLEGE POLICY FOR REMOVAL OF EMPLOYEES WHO TRANSFERRED TO THE LCTC FROM BESE WITH TENURED STATUS as same is in violation of the "Due Process" clauses of both the constitutions of the State of Louisiana and the United States of America ....
Initially, we note that the trial court erred in concluding that the referenced policy section (the removal policy section) was the one under which the Board acted. The hearing contemplated by the removal policy is plainly a "full evidentiary hearing," rather than the limited pretermination or predeprivation hearing required by Loudermill. See Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495. The initial action suspending Mr. Delahoussaye was taken pursuant to the corresponding section in the Board's general leave policy (the leave policy section) of LCTCS Policy II.3.003. The trial court's understandable legal error was no doubt attributable to the different meanings of "removing/removal" employed within the same policy section. On that basis alone, its ruling that the "without pay" provision of the removal policy section is unconstitutional must be reversed.
In its subsequent written reasons for its judgment, the trial court attempted to clarify the basis of its judgment by stating that it did not interpret its ruling "to state that the [Board's] `without pay' provision in its policy for removal is unconstitutional" and that it "never addressed the issue [of] the unconstitutionality of [the Board's] `without pay' provision." Rather, the trial court explained that the Board's action in "not following its facially constitutional `without pay' provision abrogated the plaintiff's due process rights," citing Summers v. Vermilion Parish School Board, 493 So.2d 1258 (La.App. 3rd Cir.), writ denied, 497 So.2d 312 (La.1986), and Ayio v. Parish of West Baton Rouge School Board, 569 So.2d 234 (La.App. 1st Cir.1990). Thus, the trial court's reasons *653 seemingly contradict the decretal language of its judgment in that regard.
In Summers, a tenured elementary school principal was suspended indefinitely without pay by school board resolution, following his arrest for possession with intent to distribute marijuana. He was not afforded notice or an opportunity to be heard prior to the resolution being passed. The trial court found that the suspension constituted a "removal" within the meaning of La. R.S. 17:443, governing removal procedure and requiring notice and hearing, and that the school board's action was therefore illegal. However, the trial court also upheld the school board's subsequent termination of the principal, following the removal hearing required by the statute. The appellate court affirmed the trial court, adopting its reasons.
In Ayio, this court expressly relied upon the Loudermill balancing of interests test in holding that a tenured school bus operator suspended indefinitely without pay on various allegations of incompetency was entitled to notice and an opportunity to be heard prior to being deprived of his pay. We observed that although Loudermill involved a termination rather than a suspension, there is "little practical distinction" between a termination and an indefinite suspension without pay "in terms of its immediate effect on the employee." Ayio, 569 So.2d at 236. Although we found that La. R.S. 17:493, governing the grounds for removal of tenured bus operators, conferred a property right in such employment, that finding was not central to the determination that due process was not met. Rather, the plaintiff's right to a presuspension hearing is based upon the constitutional grounds set forth in Loudermill, and not the statute, which we observed did not expressly address suspension prior to a removal or termination hearing. Id. at 237-38. See also Patterson v. Personnel Board, City of Baton Rouge and Parish of East Baton Rouge, 95-1603 (La.App. 1st Cir.4/4/96), 672 So.2d 1118, writ denied, 96-1620 (La.9/27/96), 679 So.2d 1348 (civil service personnel board's action in suspending a classified employee without pay for three days and terminating him on the next day without any prior hearing violated due process).
The Board contends that the trial court erred in relying upon the Ayio and Summers cases in its reasons for judgment, as "[t]he application of case law regarding the suspension of employees granted tenure by Title 17 of the Louisiana Revised Statutes to the facts of this case disregards the constitutional authority bestowed on the Board by the voters of this state." We disagree with that proposition. We agree with the general proposition, advanced by the Board, that it is an autonomous higher education board, whose authority is defined by the Louisiana constitution, not by legislative fiat. But nothing in the relevant holdings of the cited cases or in the trial court's judgment can reasonably be interpreted as requiring the subordination of the Board's management authority to legislative control expressed in Title 17 of the Louisiana Revised Statutes. The relevant holding in Summers does rest upon interpretation of La. R.S. 17:443, but both parties concede that statute is inapplicable to the Board.[5] The trial court seems to have cited Summers because of its characterization of the deprivation (indefinite suspension without pay as the functional equivalent of termination) and the ultimate relief granted therein (reinstatement of salary and benefits from wrongful deprivation through final removal after proper hearing). Such citation does not imply a conclusion that the trial court based its decision upon either La. R.S. 17:443 or La. R.S. 17:542. Our conclusion *654 is supported by the fact that the relevant holding in Ayio rests squarely upon constitutional grounds, including provisions of the same constitution which creates the Board and from which it derives its authority, as well as the corresponding provisions of the United States Constitution.
To the extent that this assignment of error contends that the cited cases are inapplicable simply because they involved boards subject to legislative control, it has no merit. However, we do find that the trial court committed error in declaring the removal policy section unconstitutional insofar as it authorizes imposition of administrative leave without pay.
A trial court's written reasons for judgment form no part of the judgment itself. Where there is a conflict between the judgment and the written reasons, the judgment controls. Babin v. Burnside Terminal, Greater Baton Rouge Port Commission, 577 So.2d 90, 98 (La.App. 1st Cir.1990). The judgment here unequivocally declares unconstitutional the "without pay" provision of the removal policy section. In doing so, the trial court committed legal error beyond its misidentification of the actual policy section invoked by the Board. The removal policy section is not violative of due process merely because it authorizes the imposition of leave without pay. As long as there is compliance with the requisite procedural safeguards, the general authority set forth in the removal policy's language comports with constitutional requirements. (The same may be said of the similar language of the leave policy section.)
Insofar as the judgment declares the Board's removal policy section authorizing imposition of leave without pay to be facially unconstitutional, it is clearly wrong from both factual and legal standpoints, and must be reversed. However, our de novo review of the record supports the factual finding of the trial court that the leave policy section (of the general personnel policy) was improperly applied to Mr. Delahoussaye, there being no compelling reason for immediately suspending Mr. Delahoussaye without pay pending the Loudermill hearing.
Although the multiple, consistent accusations made against him may arguably have demonstrated repetitive occasions of unprofessional conduct, they lack the indicia of independent, substantial trustworthiness provided by an indictment or arrest.[6] Additionally, the students' complaints do not set forth alleged conduct of such egregious character as to warrant immediate, "emergency" action, as might be justified in cases involving criminal conduct, outright quid pro quo sexual demands or physical contact, or blatant racial discrimination in grading.[7] And even if it is concluded that the Board's interest in the subjects of the complaints warranted immediate suspension from duties, the factual circumstances did not warrant the immediate, indefinite deprivation of Mr. *655 Delahoussaye's interest in receiving his salary without affording him a limited Loudermill hearing. The factual circumstances thus fail to bring this case within the Gilbert exception to the general rule of Loudermill. Under these circumstances, the decision to suspend Mr. Delahoussaye from his duties indefinitely without pay prior to affording him a hearing was arbitrary and unreasonable, and failed to accord him the safeguards of due process. The mere fact that he was afforded a postsuspension hearing the day after the suspension's effective date does not serve to change the indefinite suspension without pay into a one-day loss of pay, as advocated by the Board. And the source of Mr. Delahoussaye's property interest in his tenure is irrelevant to application of the basic principles of due process set forth in Ayio, Summers, and Patterson, supra. We therefore find no merit in the Board's second assignment of error, except insofar as the trial court's judgment incorrectly declares the removal policy section's "without pay" provision to be unconstitutional.

Plaintiff's Right to Pre-Hearing Discovery
In his sole assignment of error, Mr. Delahoussaye challenges the trial court's ruling that he was not entitled to conduct pre-hearing discovery under the rules of the Louisiana Code of Civil Procedure based upon the affirmative language of the removal policy providing as follows:
All information provided for use in the hearing shall be maintained as confidential documents, throughout the chain of custody, to insure the integrity of the hearing process; provided that, nothing herein shall be used to deny the employee access to information customarily available through discovery under the rules applicable to civil matters in the courts of this State. (Our emphasis.)
The Board opposes Mr. Delahoussaye's interpretation of this language. Its interpretation is that the employee is entitled to receive copies of all documents which would be discoverable if sought in the context of civil litigation, and that prehearing deposition subpoenas (as opposed to witness subpoenas for the removal hearing) are not authorized.
We do not read the language at issue as incorporating by reference the discovery devices and procedures of the Louisiana Code of Civil Procedure. Although it authorizes "access" by the employee to documents if such would be discoverable in a civil action, it does not mandate that such access be governed by the technical formalities of civil discovery devices.[8] Rather, it accords with the interpretation given it by the Board, which is reasonable and certainly not arbitrary. Giving deference to that interpretation, as we are bound to do, In The Matter of Recovery I, Inc., supra, we reject Mr. Delahoussaye's contention that he is entitled in this administrative proceeding to propound and enforce discovery in the form and manner set forth in the Louisiana Code of Civil Procedure. Due process does not require such, and neither does La. R.S. 17:542 or the language of the removal policy quoted above. See, e.g., Sylvester v. Cancienne, 95-0789, p. 7 (La.App. 1st Cir.11/9/95), 664 So.2d 1259, 1263. Accordingly, we find no merit in Mr. Delahoussaye's assignment of error. The trial court's judgment on this issue must be affirmed.

*656 DECREE
The judgment of the trial court is reversed insofar as it declares unconstitutional the "without pay" provision of LCTCS Policy II.3.021, "Louisiana Technical College Policy for Removal of Employees Who Transferred to the LCTCS From BESE, With Tenured Status," but is in all other respects affirmed. The judgment is also amended to change the language of the first decretal paragraph to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein declaring that the failure of the Defendant, the Board of Supervisors of Community and Technical Colleges, to afford the Petitioner, Ted Delahoussaye, notice and an opportunity to be heard prior to suspending him from his duties without pay on December 18, 2001 violated his due process rights."
REVERSED IN PART, AMENDED, AND AFFIRMED IN PART.
GUIDRY, J., concurs in the result.
NOTES
[1] Although Mr. Delahoussaye is a permanent, tenured state employee, he is not considered a classified employee for purposes of state civil service. La. Const. Art. 10, § 2(B)(9).
[2] See n. 7, infra. The letter bore the date of December 14, 2001, but was not delivered to Mr. Delahoussaye until December 17, 2001.
[3] Acts 1998, 1st Ex.Sess., No. 170, § 5.
[4] This statute, governing the causes and procedure for removal of permanent employees, was enacted in 1976 and amended in 1977, during the period of BESE's jurisdiction over vocational-technical colleges and community colleges. Its language parallels that of La. R.S. 17:443, governing the causes and procedure for removal of permanent teachers employed by parish or city school boards. It has not been amended since the system's transfer to the Board's jurisdiction, and its continued applicability is questionable, given the Board's autonomous character. However, for reasons stated later in this opinion, it is unnecessary for us to determine that issue at this time.
[5] See n. 4, supra.
[6] See, e.g., Gilbert, 520 U.S. at 933-34, 117 S.Ct. at 1813-14; FDIC v. Mallen, 486 U.S. 230, 240-41, 108 S.Ct. 1780, 1787-88, 100 L.Ed.2d 265 (1988).
[7] The subjects of the complaints range in severity from patently offensive classroom comments on perceived general health problems of "black people," female hygiene practices, and supposed inherent learning disabilities of women and older citizens; through irrelevant classroom discussion of the prevalence of adultery, inappropriate sexual references, and his political theories regarding the terrorist attacks of September 11, 2001 ("America is paying for our sins"); through his claimed gambling prowess; to overt favoritism toward select attractive female students ("Ted's Angels"). Although the Board's forms to which the narrative letters of complaint were attached have blanks checked for charges of "discrimination" based on "race/color," "sexual orientation," "age," "sex," "disability or medical condition," and "other," the complaints set forth no specific instance of individual racial, sexual, or age discrimination, nor any occasion of inappropriate sexual advances, physical contact, or solicitation of sexual favors.
[8] It would be incongruous if the entire panoply of civil discovery procedure were to be adopted by reference in the Board's removal procedure, which expressly authorizes and contemplates judicial review, and then repeated in a subsequent civil action seeking such review.